Jose **GUTIERREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–98–00347–CR.

Court of Appeals of Texas,
Austin.

Dec. 16, 1999.

---

Michael C. Gross, San Antonio, for Appellant.

Ken Anderson, Dist. Atty., John M. Bradley, Asst. Dist. Atty., Georgetown, for State.

Before Justices JONES, B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

We withdraw our original opinion and judgment issued June 4, 1999, and substitute this opinion on the State's motion for rehearing.

A jury found appellant Jose Gutierrez guilty of two counts of aggravated sexual assault and two counts of indecency with a child. *See* Tex. Penal Code Ann. §§ 22.021 (West 1994 & Supp.1999), 21.11 (West 1994). Upon the jury's assessment of punishment, the district court sentenced appellant to confinement in the Texas Department of Criminal Justice–Institutional Division for fifty years.[1] Appellant presents seven points of error on appeal. We will affirm the conviction.

## BACKGROUND

In May 1997, N.R., then 12 years of age, told a guidance counselor at her school

---

1. The jury assessed punishment at fifty years' confinement for count one, fifty years' confinement for count three, twenty years' confinement for count four, and twenty years' confinement for count five. The sentences run concurrently.

that she was being touched and fondled in a sexual manner by her foster father, appellant. The counselor notified the police, who immediately began to investigate the allegations.

Appellant was later arrested and charged by indictment with three counts of aggravated sexual assault and two counts of indecency with a child. Counts one through three of the indictment alleged that appellant caused the penetration of the female sexual organ of N.R. with his finger; that he caused his sexual organ to contact the sexual organ of N.R.; and that he caused the sexual organ of N.R. to contact his mouth. Counts four and five, addressing indecency with a child, alleged that appellant touched the breasts and the genitals of N.R. with the intent to arouse or gratify his sexual desire. At the close of all the evidence during the guilt/innocence phase of the trial, the district court charged the jury as to all five counts alleged in the indictment. The jury found appellant guilty of counts one, three, four and five and not guilty of count two.

During the punishment phase of the trial, appellant testified on his own behalf, and admitted his guilt to all four counts for which the jury had found him guilty. The jury assessed punishment, and the court sentenced appellant to fifty years' confinement for counts one and three and twenty years' confinement for counts four and five, the two sentences to run concurrently. Appellant timely filed a motion for new trial, alleging that his confession of guilt at the punishment phase was involuntary. The district court overruled appellant's motion.

On appeal, appellant complains that the district court erred in (1) allowing the jury to take notes during trial; (2) refusing to instruct the jury in the guilt/innocence phase of the trial as to two counts rather than five counts; (3) refusing to require the State to elect which act it would rely on for a conviction; and (4) denying his motion for a new trial. Appellant also argues that he was denied effective assistance of counsel under both the United States and Texas Constitutions due to the inadequacy of his trial attorney. Finally, appellant asserts he was denied his right to counsel because an attorney for the State questioned him outside the presence of his attorney.

## DISCUSSION

### *DeGarmo* Doctrine

The State argues that the *DeGarmo* doctrine renders any error asserted in appellant's first three points harmless because appellant confessed his guilt to the charged offenses at the punishment phase of the trial. In *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Crim.App.), *cert. denied*, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985), the court of criminal appeals held that an appellant who testifies at the punishment phase of the trial and admits guilt to the crime for which he or she has been found guilty waives any error that occurred during the guilt/innocence phase of the trial. *See DeGarmo*, 691 S.W.2d at 661.[2]

The accepted rationale for the *DeGarmo* doctrine was that the purpose of the trial, to seek the truth, had been served when the defendant admitted guilt to the charged offense. *See Leday v. State*, 983 S.W.2d 713, 724 (Tex.Crim.App.1998) (quoting *McGlothlin v. State*, 896 S.W.2d

---

**2.** In the past, the *DeGarmo* doctrine has been referred to as "a doctrine of waiver akin to the doctrine of curative admissibility." *See Leday v. State*, 983 S.W.2d 713, 720 (Tex.Crim.App.1998) (quoting *McGlothlin v. State*, 896 S.W.2d 183, 186 (Tex.Crim.App.), *cert. denied*, 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995)). Invoking *DeGarmo*, the State argues that "appellant's judicial confes-

sion before the jury rendered any error harmless." The court of criminal appeals' most recent characterization is that "the *DeGarmo* doctrine is more like estoppel than waiver...." *Id.* at 720. However cast—waiver, harmless error or estoppel—*DeGarmo* effectively prevented appellate review of guilt/innocence phase-errors after a punishment-phase confession.

183, 187 (Tex.Crim.App.), *cert. denied,* 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995)). *Leday* drastically restrained the *DeGarmo* doctrine by restricting its application to issues that do not involve "[d]ue process and those individual rights that are fundamental to our quality of life." *Id.* at 725 (quoting *Morrison v. State,* 845 S.W.2d 882, 884 (Tex.Crim.App.1992)). These rights are deemed to be more important than the discovery of the truth in a trial, and "co-exist with, and at times override, the truth-finding function" on which the *DeGarmo* doctrine is based. *Id.* at 724–25. The court of criminal appeals in *Leday* set forth a non-exclusive list of those values that surmount the search-for-the-truth-based rationale of *DeGarmo,* thus allowing an appellant who confessed during the punishment-phase nevertheless to assert on appeal issues related to such basic guaranties. *See id.* at 725.

Relying on *Leday,* appellant contends that the *DeGarmo* doctrine can no longer be invoked to prevent appellate review of points of error one through three. We disagree that *Leday* has overruled the *De-Garmo* doctrine in all instances. Rather, *Leday* requires us to determine if appellant asserts fundamental rights or guaranties, or whether the truth-finding function prevails to estop appellant from raising them.

### Juror Note-taking

■ Appellant asserts in his first point of error that the district court abused his discretion by allowing the jury to take notes during trial. The right to have a court determine whether to allow a jury to take notes is not a right specifically addressed in *Leday,* nor does it parallel

those rights in any respect. There is no statutory or constitutional authority in Texas preventing jurors from taking notes. *See Johnson v. State,* 887 S.W.2d 957, 958 (Tex.Crim.App.1994). Indeed, the vast majority of states, including Texas, permit jurors to take notes. *See Price v. State,* 887 S.W.2d 949, 951–54 (Tex.Crim.App. 1994). Texas courts recognize that under the proper circumstances juror note-taking can be beneficial because it is a valuable method of refreshing memory and may help jurors to focus on the proceedings.[3] *See id.*

■ Moreover, the ultimate determination of whether a fundamental right has been violated is generally reviewed by appellate courts *de novo.*[4] *See, e.g., Hunter v. State,* 955 S.W.2d 102, 104–05 (Tex. Crim.App.1997) (detention under Fourth Amendment); *Ex parte Sheridan,* 974 S.W.2d 129, 131 (Tex.App.—San Antonio 1998, pet. ref'd) (double jeopardy); *Jordy v. State,* 969 S.W.2d 528, 532 (Tex.App.— Fort Worth 1998, no pet.) (whether statement is product of custodial interrogation); *Rodriguez v. State,* 968 S.W.2d 554, 556 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (voluntariness of written confession). Independent review has been deemed necessary so that appellate courts can maintain control of and clarify the basic legal principles presented, unify precedent, and provide a defined set of rules for law-enforcement officers. *See Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In *Ornelas,* the Supreme Court, discussing appellate review of a trial court's determination of reasonable suspicion and probable cause

---

3. The Texas Court of Criminal Appeals has suggested that a trial court can avoid potential risks involved in allowing jurors to take notes by evaluating the jury's need to take notes, informing the parties in advance that note-taking will be allowed, and carefully instructing the jury when the jury is empaneled and in the jury charge. *Williams v. State,* 893 S.W.2d 549, 549–50 (Tex.Crim.App.1995) (citing *Price v. State,* 887 S.W.2d 949, 954–55 (Tex.Crim.App.1994)).

4. While appellate courts defer to the trial court's determination of the historical facts of a case based on an evaluation of credibility and demeanor, the ultimate question of law presented by these facts is reviewed *de novo. See Guzman v. State,* 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997).

under the Fourth Amendment, found that "[a] policy of sweeping deference [to the trial court's determination] would permit, '[i]n the absence of any significant difference in the facts,' 'the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause.'" *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

■ With regard to juror note-taking, however, independent review has not been deemed necessary. Instead, we leave this decision to the sound discretion of the trial court. *See Price*, 887 S.W.2d at 954. We conclude that the district court's determination to allow jurors to take notes does not offend a fundamental right or guaranty overriding the truth-finding function of the trial. Thus, the *DeGarmo* doctrine applies, and appellant, by confessing his guilt at trial, is estopped from challenging this alleged error on appeal.

We overrule point of error one.

### Error in the Jury Charge

By his second point of error, appellant argues that the trial court improperly instructed the jury on all five counts of the indictment. Jury-charge error, while it does not nicely fit within the laundry list provided by *Leday*, may at times be a right valued above the truth-seeking function of the trial. For example, when the jury charge in its entirety conveys that the jury need not find the defendant guilty beyond a reasonable doubt, a defendant's fundamental right to due process of law is invoked, which requires the judgment to be supported by proof beyond a reasonable doubt. Such issue may be raised on appeal notwithstanding the *DeGarmo* doctrine. *See Leday*, 983 S.W.2d at 725 (citing *In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); *see also Barrera v. State*, 982 S.W.2d 415, 417 (Tex.Crim.App.1998) (jury-charge error offends federal constitution when, examining charge as a whole, "[t]here is a reasonable likelihood that the jury understood the instruction to allow conviction on proof insufficient to meet the [beyond a reasonable doubt] standard").

■ Review of jury-charge error in Texas is controlled by Texas Code of Criminal Procedure article 36.19 (West 1981) and *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). *See Barrera*, 982 S.W.2d at 417. In *Almanza*, the court of criminal appeals, interpreting article 36.19, recognized that jury-charge error falls within two categories: "fundamental error and ordinary reversible error." *Almanza*, 686 S.W.2d at 171. Fundamental error is error in the jury charge that is so egregious and creates such harm that the accused has not had a fair and impartial trial. *Id.* It occurs only when the asserted error raises a serious question of fundamental unfairness and considerations of due process. *Draheim v. State*, 916 S.W.2d 593, 602 (Tex.App.—San Antonio 1996, pet. ref'd); *see also Almanza*, 686 S.W.2d at 172 (fundamental error must "go to the very basis of the case," deprive accused of a "valuable right," or "vitally affect his defensive theory"); *Rose v. State*, 724 S.W.2d 832, 834 (Tex.App.—Dallas), *aff'd*, 752 S.W.2d 529 (Tex.Crim.App.1987) (contention of fundamental error incorporates due process rights). Based on these descriptions, the right to have a jury charge submitted free from fundamental error is clearly a value that parallels those set forth in *Leday*. Thus, where jury-charge error constitutes fundamental error, the *DeGarmo* doctrine cannot be invoked to estop an appellant from raising the error on appeal.

■ We must first determine whether there was error in the jury charge, and then inquire if it was fundamental error. *See Almanza*, 686 S.W.2d at 174. Appellant asserts that the evidence presented by the State at trial establishes that all five counts alleged in the indictment occurred at one time, and thus the court should have instructed the jury only as to two

counts rather than five. The court of criminal appeals addressed this issue in *Vernon v. State*, 841 S.W.2d 407 (Tex. Crim.App.1992):

> Appellant's various acts of sexual misconduct, committed against his stepdaughter over a period of six years, do not in fact comprise a single offense under the laws of Texas. Rather, *those who commit multiple discrete assaults against the same victim, are liable for separate prosecution and punishment for every instance of such criminal misconduct.*

*Vernon*, 841 S.W.2d at 410 (emphasis added).

In this case, N.R. testified that appellant committed various acts against her beginning when she was approximately six or seven years old and ending when she was twelve. She stated that about three to four times a week, appellant would penetrate her sexual organ with his finger and touch her breasts. On about two occasions, appellant touched her sexual organ with his mouth. When N.R. was approximately ten or eleven, while her foster mother was out of town, appellant committed all five sexual acts listed in the indictment. N.R. further testified that the night before she told her counselor of appellant's acts, appellant penetrated her sexual organ with his finger and fondled her breasts. From this evidence it is clear that appellant committed "multiple discrete acts" against N.R. consistent with all five counts of the indictment, and thus was subject to separate prosecution and punishment for each alleged act: three counts of aggravated sexual assault and two counts of indecency with a child. We conclude that the district court did not err in instructing the jury as to all counts of the indictment, and thus find no fundamental error.

We overrule point of error two.

### Election Requirement

■ Appellant contends in his third point of error that the State in its case-in-chief introduced evidence establishing that appellant engaged in the alleged prohibited acts on many occasions, and thus should have been required to elect the particular act that the State would rely on for a conviction. We disagree with the State's argument that appellant is estopped from raising this point of error under the *De-Garmo* doctrine.

■ As a general rule, where one sexual act is alleged in the indictment and the evidence at trial establishes that this act occurred on more than one occasion, the State must elect the act upon which it would rely for conviction. *See O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App. 1988) (citing *Crawford v. State*, 696 S.W.2d 903 (Tex.Crim.App.1985)). Where the State fails to make such an election, "a defendant might find himself without notice as to which of a multitude of acts he might be called upon to defend." *Id.* at 772; *see also Crosslin v. State*, 90 Tex. Crim. 467, 235 S.W. 905, 906 (1921) (election should not be delayed so long that it would leave accused in doubt as against which offense he will be called upon to defend); 23A C.J.S. *Criminal Law* § 1214 (1989) (prosecution is required to make such an election because accused is entitled to know which specific act is relied on for a conviction to properly meet the charge).

■ The right to due process reflects the broad premise that "a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Because it was created to afford defendants adequate notice and an opportunity to defend, the election requirement triggers fundamental constitutional due process principles.[5] *See Cole*

---

5. *See, e.g., Fisher v. State*, 887 S.W.2d 49, 52 (Tex.Crim.App.1994) (indictment not alleging complete offense does not provide adequate notice for due process purposes); *LaBelle v. State*, 692 S.W.2d 102, 105 n. 2 (Tex.Crim. App.1985) (due process requires indictment to

*v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). Thus, the right to have notice of the acts on which the State will rely for a conviction overrides the truth-seeking function of the trial, and *Leday* affords appellate review of appellant's third point of error. *See Leday,* 983 S.W.2d at 725. We will address appellant's argument that the district court erred by not requiring the State to elect particular acts it would rely upon for a conviction.

 The State may present evidence that the charged acts occurred on multiple occasions. *Worley v. State,* 870 S.W.2d 620, 621 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). However, upon the *timely motion* by the defendant, the State is required to make an election of those acts upon which it will rely to pursue a conviction.[6] *See Worley,* 870 S.W.2d at 621; *O'Neal,* 746 S.W.2d at 772. In this case, appellant did not move to require the State to elect until the jury-charge conference, after the close of all the evidence. By the time appellant made his motion, he could no longer take advantage of the benefits of election, which afford a defendant notice of the acts that he may be called to defend *during his own case-in-chief.*[7] We conclude that appellant's motion came too late, and the district court did not err in failing to require the State to elect at that point. *Cf. O'Neal,* 746 S.W.2d at 772 (trial court erred in failing to require State to make election at time *State* rested). Moreover, even assuming that the district court erred in failing to require the State

to make an election, we find that such error was harmless as notice as to what appellant would be required to defend after the evidence had closed would be of little, if any, assistance. *Id.* at 772 (absent harm to defendant, error in failing to require State to make election is not reversible).

We overrule point of error three.

### Ineffective Assistance of Counsel

In points of error four and five, appellant contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article I, section 10 of the Texas Constitution. He asserts that his trial counsel failed to request the district court to make certain submissions to the jury, did not object to the admission of evidence, and did not object to portions of the State's jury argument.

The proper standard for determining claims of ineffective assistance of counsel under both the Texas and United States Constitutions is that adopted by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Jackson v. State,* 877 S.W.2d 768, 770–71 (Tex.Crim. App.1994); *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986) (adopting *Strickland* standard). Under *Strickland* the defendant must satisfy a two-prong test, establishing that (1) defense counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

---

inform defendant with sufficient specificity so adequate defense may be prepared).

**6.** At times the trial court *may,* on its own motion, require the State to make an election. *See Worley,* 870 S.W.2d at 621 (court ordered

State to elect occurrences upon which it would rely for conviction).

**7.** *See* pp. 747–48, *supra; O'Neal,* 746 S.W.2d at 772.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

■■■■■■ When reviewing a claim of ineffective assistance of counsel under the first prong, there exists a strong presumption that defense counsel's conduct was reasonable and constitutes sound trial strategy. *Id.* at 689, 104 S.Ct. 2052. We evaluate the totality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *See Mayhue v. State*, 969 S.W.2d 503, 510 (Tex.App.—Austin 1998, no pet.) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 and *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986)). Appellant has the ultimate burden to overcome this presumption and demonstrate not only that counsel's performance was unreasonable under the prevailing professional norms, but that the challenged action was not sound trial strategy. While we will not speculate as to the reasons behind trial counsel's actions, "an appellant may overcome the presumption of effectiveness by providing a record from which we may determine that trial counsel's performance was not based on sound strategy." *Mayhue*, 969 S.W.2d at 511 (citing *Jackson*, 877 S.W.2d at 771–72).

■■■■■■ In this case, appellant has not provided any record from which we may discern trial counsel's strategy. Although appellant filed a motion for new trial, he did not address any of the alleged deficiencies that he urges now on appeal in the hearing on his motion.[8] The trial record does not reveal any evidence to rebut the strong presumption that trial counsel's action might be considered sound trial strategy. Appellant argues that trial counsel should have requested that the district court submit count five, alleging that appellant touched the genitals of N.R., as a lesser included offense of count one, which alleged that appellant penetrated N.R.'s sexual organ with his finger. However, the evidence at trial established that appellant penetrated N.R.'s sexual organ with his finger on multiple occasions.[9] "Those who commit multiple discrete assaults against the same victim, are liable for separate prosecution and punishment for every instance of such criminal misconduct." *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim.App.1992). Appellant has thus failed to establish through the record that it was unreasonable for trial counsel, from his perspective at trial, to determine that the court would not submit count five as a lesser included offense of count one.

■■■■■■ Appellant complains that trial counsel should have objected to testimony that appellant "repeatedly licked the breasts of the complainant, repeatedly rubbed his penis on her leg, exposed his penis to her, and had her touch his penis until ejaculation" on the grounds that these were extraneous acts. Evidence of other acts committed by a defendant against a child who is the victim of aggravated sexual assault or indecency with a child is admissible to prove such matters as the defendant's state of mind or the previous relationship between the defendant and the child. *See* Tex.Code Crim. Proc. Ann. art. 38.37, § 2 (West 1999).[10]

8. Appellant's trial attorney testified during the hearing on the motion for new trial. However, he did not address his strategies concerning appellant's complaints on appeal, and appellant's counsel at the hearing represented to the district court that there was no allegation of ineffective assistance and that none would be raised in the hearing.

9. *See* pp. 746–47, *supra*.

10. Article 38.37 applies when a defendant is prosecuted for committing an offense under

In light of this provision, the record fails to show that trial counsel's lack of objection to this evidence was inappropriate. Appellant has not demonstrated that counsel's omissions were unreasonable under the prevailing professional norms.

■■■ Finally, appellant contends that trial counsel should have objected to the State's argument during the punishment phase that, "[t]he only reason there is paper wasted in this charge or used in this charge for the language of probation or community supervision is because this convicted child molester wants that as a punishment."[11] Appellant urges that this argument "was clearly calculated to cause the jury to presume the opinion of the trial judge was that probation was not an appropriate punishment in this case." The State argues that this comment was nothing more than a rhetorical argument for a prison sentence. In the absence of a record revealing trial counsel's strategy, we cannot speculate why counsel did not make an objection to this argument. *See Jackson,* 877 S.W.2d at 771. Thus, appellant has not overcome the strong presumption that his counsel's strategy was reasonable. *See Mayhue,* 969 S.W.2d at 511. Moreover, turning to *Strickland's* second prong, appellant has not shown how he was prejudiced by this statement. The record establishes extensive evidence against appellant, including his own admission of guilt.[12] Given the strong evidence against him,

appellant has not directed this Court to any evidence showing that the outcome of the punishment phase would have been different had counsel objected to this one isolated statement made by the State. Therefore, we conclude that appellant has not met his burden under *Strickland.*

We overrule appellant's fourth and fifth points of error.

### Motion for New Trial

■■■ Appellant complains in his sixth point of error that, in the interest of justice, the district court should have granted his motion for new trial. Appellant relies on *State v. Dixon,* 893 S.W.2d 286 (Tex. App.—Texarkana 1995, no pet.), to support his complaint. In *Dixon,* the trial court granted the defendant's motion for new trial because the prosecutor struck all African–American venire members, and trial counsel failed to ask jury panel members if they had a loved-one who had been a victim of sexual abuse, the crime for which the defendant had been charged. *See Dixon,* 893 S.W.2d at 287. The appellate court, reviewing this decision under an abuse of discretion standard, found that "[t]he trial court may grant a motion of a new trial in the interest of justice." *Id.* at 288. Relying on this language, appellant argues that under the facts in this case, the district court should have granted a new trial.

chapter 21 or 22 of the Texas Penal Code against a child under 17 years of age. *See* Tex.Code Crim. Proc. Ann. art. 38.37, § 1(1)-(2) (West 1999).

11. While the proper standard for determination of effectiveness of counsel at the punishment phase has historically been found in *Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App. 1980), the court of criminal appeals recently overruled the application of the *Duffy* standard to review these complaints and determined that the *Strickland* standard is the proper test to review claims of ineffective assistance at the punishment phase. *See Hernandez v. State,* 988 S.W.2d 770, 770–71 (Tex. Crim.App.1999).

12. The State argues that even assuming that trial counsel's performance was deficient, appellant's confession alone establishes that appellant suffered no prejudice as a result of these deficiencies. Because claims of ineffective assistance of counsel invoke fundamental individual rights created by both the United States and Texas Constitutions, appellant is entitled to appellate review of these claims notwithstanding his confession during the punishment phase of the trial. *See Leday v. State,* 983 S.W.2d 713, 724 (Tex.Crim.App. 1998). Thus, while we will consider appellant's admission of guilt as evidence, we decline to hold that appellant is estopped from establishing that he was prejudiced by trial counsel's alleged deficient performance.

The decision to grant or deny a motion for new trial lies within the sound discretion of the trial court. *See Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995) (citing *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993)). Thus, "[w]e do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable." *Id.*

During the punishment phase of his trial, appellant testified in his own behalf. In response to questions by his own attorney, appellant acknowledged that he consulted with his attorney on that day and during the previous months concerning whether he would testify during the trial and ultimately decided that he wished to testify. He indicated further that he understood that he had the absolute right not to testify and that it was his decision to testify. The court then recessed until the next morning. The following day, appellant continued to testify and confessed that he was guilty of the crimes for which he had been convicted. When asked why he decided to admit his guilt, appellant testified that he did not want to mislead his family any longer.

The jury assessed punishment, and appellant filed a motion for new trial, alleging that his decision to testify at the punishment phase of the trial was involuntary. At the hearing on his motion, appellant testified by way of affidavit that when he spoke with his attorney about whether to testify, he was very upset about being convicted of the alleged crimes, was unable to concentrate, and did not understand that his testimony could result in a waiver of error that occurred during the guilt/innocence phase of the trial. He also testified that the night prior to his testimony, because of his mental state following his conviction, he was placed in a cold suicide tank with no clothing. In response, the State called appellant's trial attorney as a witness. Counsel related that the night before appellant testified, he and appellant discussed matters concerning whether appellant should testify, that appellant was coherent, had a rational understanding of the facts, and was able to communicate to help prepare his defense. The district court overruled appellant's motion for new trial.

Unlike *Dixon,* where the record indicated a clear injustice, the district court here was confronted with conflicting evidence regarding whether appellant could rationally have made the decision to testify. While appellant argues that the conditions in jail caused him to testify involuntarily, the day prior to his judicial confession he stated to the court that he wished to testify and that he understood that he had the right not to do so. Appellant's trial attorney testified that he believed appellant to be coherent when he made this choice. The district court was in the best position to weigh the credibility of the new evidence presented during the hearing on the motion for new trial against the evidence presented at trial. *See Etter v. State,* 679 S.W.2d 511, 515 (Tex.Crim.App.1984) (credibility of witnesses and probable truth of new evidence are matters to be determined by trial court); *cf. Lewis,* 911 S.W.2d at 7 (where there is conflicting evidence on fact issue concerning jury misconduct, trial court determines issue and there is no abuse of discretion in overruling motion for new trial). Therefore, we decline to find that the district court abused his discretion in overruling the motion for new trial.

We overrule the sixth point of error

### Violation of Right to Counsel

Appellant argues in his final point that his right to counsel as guaranteed by the Sixth Amendment of the United States Constitution was violated when the State questioned him outside the presence of his attorney. The State submits that appellant did not properly raise an objection at trial, and thus failed to preserve error. However, the right to the assistance of counsel is fundamental to the proper functioning of our adjudicatory pro-

cess such that it cannot be forfeited by inaction alone. *See Marin v. State*, 851 S.W.2d 275, 278–79 (Tex.Crim.App.1993). Because there is no evidence that appellant expressly relinquished his right to counsel, we will consider the merits of appellant's contention. *See id.* (if defendant wishes to relinquish right to counsel, he or she must do so expressly).

The Sixth Amendment provides that "the accused shall enjoy the right ... to have the assistance of Counsel for his defense." U.S. Const. amend VI. This provision embodies the realistic recognition that the average defendant does not have the skill needed to adequately protect and defend himself when "faced with the prosecutorial forces of organized society" and the intricacies of substantive and procedural criminal law, and provides a means for which to administer a fair adversarial system of criminal justice. *See Maine v. Moulton*, 474 U.S. 159, 169–71, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). Thus, once formal charges have been brought and the State has committed itself to prosecute an individual, a distinct set of constitutional safeguards to preserve the attorney-client relationship are invoked [13] to ensure that the accused is guaranteed "the right to rely on counsel as a 'medium' between him and the State." *Moulton*, 474 U.S. at 176, 106 S.Ct. 477.

▇▇▇▇ A fundamental safeguard "provided by the Sixth Amendment is the general prohibition of state initiated questioning of an accused who is represented by counsel during all critical stages of criminal proceedings once formal adversarial proceedings have begun, except where counsel is present or is informed of the interrogation." *State v. Frye*, 897 S.W.2d 324, 327 (Tex.Crim.App.1995). A defendant is denied this safeguard when the State deliberately elicits statements from

him in the absence of counsel, and these words are used against him as evidence at trial. *See Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The Sixth Amendment right to counsel protects against efforts by the State to elicit information by indirect and surreptitious questioning. The relevant inquiry is whether the State "deliberately elicited" the incriminating statement. *See Linnell v. State*, 767 S.W.2d 925, 929 (Tex. App.—Austin 1989, no pet.). Deliberate elicitation is "intentionally creating a situation likely to induce [a person] to make incriminating statements without assistance of counsel." *United States v. Henry*, 447 U.S. 264, 274, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). "[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such opportunity." *Moulton*, 474 U.S. at 176, 106 S.Ct. 477. The Sixth Amendment right to counsel attaches at the inception of adversary criminal proceedings. *See Fuller v. State*, 829 S.W.2d 191, 205 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

Appellant testified during the punishment phase of the trial that he was guilty of the crimes for which he had been convicted. Following his testimony, appellant called a psychologist as an expert witness to establish that appellant was remorseful and would be a good candidate for probation because he confessed his guilt, a "positive indicator" that he could be successfully treated. On cross-examination, the State, questioning the sincerity of appellant's confession, asked the witness if his opinion would be different if the day prior to appellant's confession appellant was still denying that he committed the crime.[14]

---

**13.** *See State v. Frye*, 897 S.W.2d 324, 327 (Tex.Crim.App.1995).

**14.** The following discussion developed:
Q. ... Doesn't the reason for the fessing up go to the sincerity of the confession?

A. My experience over the last 65 years is that people confess at various times in response to various pressures and the really

Appellant's counsel objected to this question, arguing that appellant had never testified that he did not commit the charged crimes.[15] The prosecutor responded:

> I specifically asked [appellant] yesterday if he was— when he was waiting on the jury verdict, if he was still saying that the children were lying [to] his family; and his response was yes, that he did not admit it yesterday.

Appellant and the State join issue over whether this exchange is a clear indication and admission by the State that its prosecutor questioned appellant when his counsel was not present and then used the results of the interrogation to the State's advantage during cross-examination. Appellant says that the record unequivocally supports his position, while the State asserts that the passage is misconstrued because of a punctuation error in the court reporter's transcription and that the prosecutor's reference to "yesterday" referred to appellant's testimony from the witness stand the day before. The State strongly argues that its prosecutor did not communicate with appellant outside the presence of counsel. While we concur that the record might support an inference either way, we note that appellant's appellate counsel was not his trial counsel and thus at oral argument could shed no light on the context of the statement. We accept the State's explanation of the exchange.

■■■■ However, even if we were to hold that the record supported appellant's explanation, reversal would not be automatic. Some violations of the right to counsel may be disregarded as harmless error. *See*

*Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Where the deprivation of the right to counsel contaminates the entire criminal proceeding, reversal is automatic. *Satterwhite*, 486 U.S. at 257, 108 S.Ct. 1792. However, where the Sixth Amendment violation is readily identifiable and limited to the erroneous admission of particular evidence at trial, a harmless-error analysis can be applied. *Id.* Here, appellant complains of one particular statement used by the State at the punishment phase of his trial; thus, even if we presume a Sixth Amendment violation, we must determine whether such violation constitutes reversible error. *See id.* (harmless-error analysis applied when violation limited to testimony of doctor during punishment phase of trial).

■■■■ Under a harmless-error analysis, if it can be shown beyond a reasonable doubt that the admission of a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand. *See id.* at 256, 108 S.Ct. 1792 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Morrison*, 449 U.S. at 367, 101 S.Ct. 665 (dismissal inappropriate where Sixth Amendment violation has no adverse impact on criminal proceedings). In the present case, the record indicates beyond a reasonable doubt that the State's use of appellant's statement did not contribute to the punishment assessed by the jury. We find it of great significance that the same evidence used by the State was first pre-

---

important issue is that they do and that they don't just sit there and say, "I didn't do it, and I don't care what this jury says, I didn't do it, and you've convicted an innocent man, and you got it all wrong," as opposed to, "Well, I finally got brought fact-to-face with reality here, and now I have to deal with it."
Q. The words you just spoke, Doctor, about "I didn't do it, and you have convicted an innocent man," what if those exact words were spoken yesterday, and those words changed today because this jury is

going to decide the fate of that Defendant who spoke those words? You don't think that matters in determining the sincerity of the remorsefulness?

15. Counsel specifically argued, "I'm going to object to the form of that question because the words [the prosecutor] used is a mischaracterization.... [T]here is no testimony from [appellant] yesterday, and his testimony today he— he did not say that he ever said that."

sented to the jury during appellant's own testimony. Before appellant's psychologist testified, appellant himself testified that since the allegations against him began, he consistently had told his family that N.R. was lying, and had misled them until the time that he confessed:

Q. So it wasn't until the Judge read the verdict forms of guilty that you had this revelation that you [would] come and repent in front of this jury?

[Appellant]. No. No, it was when I saw the reaction that my family had, believing in me because I misled them.

. . .

Q. And the reaction your family had was that they blamed other people and not you for these crimes, correct?

[Appellant]. Well, they were thinking [N.R. was] lying.

Q. They were thinking [N.R. was] lying, and they thought I was wrongfully prosecuting you, correct?

[Appellant]. They thought I was innocent, yes, ma'am.

. . .

Q. And when . . . your wife called you . . . on the phone and told you that [N.R.] had disclosed the abuse, you called [N.R.] a liar, didn't you?

[Appellant]. Yeah.

Q. And over this past year that you have been awaiting trial, you have represented to your family that [N.R.] was lying right?

[Appellant]. Yes, ma'am.

Moreover, the jury was presented with overwhelming evidence in support of the punishment that it assessed. See Milton v. Wainwright, 407 U.S. 371, 376–77, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of confession found harmless beyond a reasonable doubt where jury was presented with overwhelming evidence of confessor's guilt, including three full and unchallenged confessions that were made by appellant and admissible). Appellant himself specifi-

cally confessed to committing each count alleged in the indictment against N.R. He also admitted sexually abusing N.R.'s sister, that he knew what he was doing was wrong and that he could go to prison, but he did not stop because he could not control himself, and that he became "sexually excited by molesting" N.R. and her sister. When N.R. disclosed the abuse, appellant admitted that he persisted in his denials to his family until the jury found him guilty.

In light of appellant's testimony, we conclude that with or without the State's allegedly improper question to appellant, the jury would have assessed the same punishment. We hold that even if there was error in the State's cross-examination of appellant's psychologist, it was harmless, and overrule point of error seven.

## CONCLUSION

Having disposed of appellant's points of error, we affirm the district-court judgment. The State's motion for rehearing is overruled.