NO. 07-04-0235-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



AUGUST 8, 2005



______________________________




BENNY JOE ALVAREZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 45,644-A; HONORABLE HAL MINER, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

 Following a not guilty plea, appellant Benny Joe Alvarez was convicted by a jury of
aggravated assault with a deadly weapon and sentenced to 27 years confinement. In
presenting this appeal, counsel has filed an Anders (1) brief in support of a motion to
withdraw. We grant counsel's motion and affirm.

 In support of his motion to withdraw, counsel certifies he has diligently reviewed the
record, and in his opinion, the record reflects no reversible error upon which an appeal can
be predicated. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493
(1967); Monroe v. State, 671 S.W.2d 583, 585 (Tex.App.--San Antonio 1984, no pet.).
Thus, he concludes the appeal is frivolous. In compliance with High v. State, 573 S.W.2d
807, 813 (Tex.Cr.App. 1978), counsel has candidly discussed why, under the controlling
authorities, there is no error in the court's judgment. Counsel has also shown that he sent
a copy of the brief to appellant and informed appellant that, in counsel's view, the appeal
is without merit. In addition, counsel has demonstrated that he notified appellant of his right
to review the record and file a pro se response if he desired to do so. Appellant did not file
a response. Neither did the State favor us with a brief.

 Appellant was charged with assaulting his wife with a knife on the morning of
January 1, 2002. At trial, the State presented evidence that the victim and appellant began
arguing after arriving home from an evening at a local bar. Appellant's stepdaughter
testified that she witnessed the argument and saw appellant trying to suffocate her mom
with a pillow. She yelled for appellant to stop, and appellant left the room. He then
returned to the room with a knife and stabbed the victim 37 times in the neck and back. 
After appellant had left, the stepdaughter ran to her grandmother's house and informed her
that appellant had just stabbed her mom. Appellant was subsequently arrested, and after
hearing the evidence, a jury found him guilty of assault with a deadly weapon. During the
punishment phase, appellant took full responsibility for the assault, admitting that he was
sick and had recently used methamphetamine. Following his conviction and sentence,
appellant filed a notice of appeal.

 By his Anders brief, counsel contends there are no arguable grounds for appeal. 
As a basis for his conclusion, counsel cites DeGarmo v. State, 691 S.W.2d 657, 661
(Tex.Cr.App. 1985), which provides that an appellant is estopped from complaining about
any error occurring at the guilt/innocence phase of a trial if he admits his guilt to the
charged offense during the punishment phase of the trial. Thus, when appellant testified
and admitted his guilt, the purpose of the trial process had been served, i.e., the truth had
been determined, and appellant was estopped from raising reversible error on appeal. 

 However, in Leday v. State, 983 S.W.2d 713, 725 (Tex.Cr.App. 1998), the DeGarmo
doctrine was reconsidered and its application was restricted to allow appellate review of
fundamental guaranties that were "made to preserve a value . . . seen to be more important
than the discovery of the truth. . . ." Accord Reyes v. State, 994 S.W.2d 151 (Tex.Cr.App
1999). The court determined that admissions of guilt at the punishment phase should not
be viewed as waivers of several types of trial errors, including challenges to the admission
of evidence and the legal sufficiency of the evidence. See id. at 721-22. Pursuant to
Leday, this Court is required to determine whether appellant asserts any fundamental rights
or basic guaranties, or whether the truth-finding function prevails to estop him from
presenting his issues on appeal. Gutierrez v. State, 8 S. W.3d 739, 745 (Tex.Cr.App.
1999). 

 Applying this standard, we have made an independent examination of the entire
record to determine whether there are any arguable grounds which might support this
appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988);
Stafford v. State, 813 S.W.2d 503, 511 (Tex.Cr.App. 1991). We have found no such
grounds and agree with counsel that the appeal is frivolous. Currie v. State, 516 S.W.2d
684 (Tex.Cr.App. 1974); Lacy v. State, 477 S.W.2d 577, 578 (Tex.Cr.App. 1972).

 Accordingly, counsel's motion to withdraw is hereby granted and the judgment of the
trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish. 
1. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).



ent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0221-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 

MAY 2, 2011

_____________________________

 

THOMAS
JOSEPH STAUDER,  

 

                                                                                         Appellant

v.

 

THE STATE OF
TEXAS,  

 

                                                                                         Appellee

_____________________________

 

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

 

NO. 21,299-C; HONORABLE ANA ESTEVEZ, PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

 

Before QUINN, C.J., HANCOCK , J. and BOYD, S.J.[1]

            Thomas Joseph Stauder was convicted,
after a bench trial, of possessing a prohibited weapon, that is, intentionally
or knowingly possessing a chemical dispensing device.  The weapon in question was a device labelled
Mighty Midget, a Continuous Discharge Tear Smoke CN Grenade made by Smith
& Wesson.  He contends that
conviction should be reversed because 1) the evidence is legally insufficient to
support his conviction, 2) the statute is unconstitutionally vague, and 3) he
acted under a mistake of law and fact. 
We affirm the judgment. 

            Sufficiency of the
Evidence

            We review the sufficiency of the
evidence under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979) and Brooks v. State, 323 S.W.3d 893, 902 (Tex. Crim.
App. 2010).  Next, appellant argues that
the evidence was insufficient to support his conviction because the State
failed to establish that 1) the device [possessed by him] was a chemical
dispensing device which fell outside the statutory exception for small devices
purchased for personal protection, 2) the tear gas grenade was in fact
capable of dispensing chemical at the time it was removed from [appellants]
possession, and 3) he was the one who committed or was charged with committing
the crime.  We overrule the issue.

As previously mentioned, appellant was charged with
intentionally and knowingly possessing a chemical dispensing device.  See Tex. Penal Code
Ann. §46.06(a)(8)
(Vernon 2003) (stating that a person commits an offense if he intentionally or
knowingly possesses, manufactures, transports, repairs, or sells a
chemical dispensing device).  Such a
device is defined as a device, other than a small chemical dispenser sold
commercially for personal protection, that is designed, made, or adapted for
the purpose of dispensing a substance capable of causing an adverse
psychological or physiological effect on a human being.  Id. §46.01(14) (Vernon Supp. 2010).  As can be seen from this definition, nothing
is said about the item being presently capable of discharging a substance that
causes adverse effects.  Instead, it need
only be designed, made, or adapted for the purpose of dispensing such a
substance.  Thus, whether or not the
grenade could actually dispense a chemical was unimportant given the evidence
that it was made for that purpose.

            Next, also appearing of record was
the following evidence: 1) to discharge the contents of the grenade, a pin
must be pulled and a plunger pushed after which it will start burning in three
seconds, 2) the grenade was not to be used indoors given the risk of fire
caused by the quantum of heat emanating from the canister once activated, 3)
the chemical substance within the grenade was for riot control, that is, the
item was specifically designed for riot control as opposed to personal
defense, 4) the device can be thrown by hand or it can be shot from various
weapons that have been modified to project it, 5) it can be activated by
percussion, that is, it being struck against a hard surface, 6) the content of
the grenade affects the eye ducts, causes tearing and involuntary closing of
the eyes, creates a burning sensation on the skin, exposed surfaces and . . .  moist areas of the body . . . , irritates
mucous membranes, causes involuntary coughing and a little heaviness in the
chest, makes you feel like you cant breathe, and causes eye tearing,
burning to exposed skin, irritation to the nose, coughing, a feeling of
inability to breathe, and psychological effects, 7) the heat produced can
catch objects on fire pretty easily which explained the warning on the item to
forego use indoors, 8) the device has caused death, 9) the grenade was not
known to be commercially available at [W]almarts or K-Marts or anything like
that, 10) law enforcement entities purchase such weapons through a distributor
after showing appropriate credentials and paperwork, 11) there was no control
over where the contents of the device spread once activated, 12) the substance disbursed
consists of chemical compounds as opposed to natural product[s] like cayenne
pepper, oleoresin and capsicum which are derived from peppers, 13) the device
appeared operative despite its age, 14) the dispensed substance is comparable
to tear gas since it causes tearing, 15) the grenade is a device that is
manufactured to distribute or disperse a chemical agent, 16) the chemical
expert and supervisor of the local police department bomb squad presented as a
witness by the State was unaware of any device containing the substance found
in this particular grenade to be commercially available for personal defense,
17) the local SWAT unit no longer maintained the device in its inventory due to
the deaths associated with it, and 18) the grenade canister was approximately
five inches tall with a three-inch circumference.  The foregoing constituted some evidence from
which a reasonable factfinder could conclude, beyond reasonable doubt, that the
grenade possessed by appellant was a device designed, made, or adapted for
the purpose of dispensing a substance capable of causing an adverse
psychological or physiological effect on a human being.  And, from the testimony that it was used for
riot control, could cause fires, was not recommended for indoor use, and was
purchased through a distributor (as opposed to a commercial retail
establishment) by law enforcement entities after showing appropriate
credentials, the same factfinder could also conclude,
beyond reasonable doubt that the grenade fell outside the scope of chemical
dispersing devices allowed by the statute.  See Briggs v. State, 746 S.W.2d 331, 332 (Tex. App.Dallas
1988, pet. refd) (finding the evidence sufficient to support conviction when
it showed that the defendant possessed a tear gas grenade manufactured for the
military as a riot control device which could only be activated by pulling a
pin and the user had no control over the direction of the chemical spray).   

            As for the allegation that the State
failed to establish appellants identity, the following exchange took place at
trial between the State and Officer Scott Chappell: 

Q.        When Mr. Stauder was booked into jail, was he booked in for
possession of a chemical dispensing device?

 

            A.        Yes,
he was.

 

Q.        Now,
Thomas Joseph Stauder, II, was booked into jail that day.  Do you see that person in the courtroom?

 

A. 
      Yes, I do.

Because
the officer did not specifically point to or describe where appellant was
sitting, appellant argues that his identification as the accused was insufficient.   We disagree. 


The lack of a formal in-court identification does not
necessarily render the evidence insufficient to establish identity.  See Purkey v. State, 656 S.W.2d 519, 520 (Tex. App.Beaumont
1983, pet. refd).  The latter may be
shown by circumstantial evidence and reasonable inferences therefrom.  Roberson v. State, 16 S.W.3d 156, 167 (Tex. App.Austin
2000, pet. refd).  And, the record at
bar contains more than the exchange mentioned above.  Also found within it was inquiry by the trial
court (i.e. the factfinder) as to whether Mr.
Stauder was ready; to that question appellant replied [y]es.  Appellant also presented a pro
se motion to the trial
court immediately before trial began wherein the court addressed appellant as
Mr. Stauder.   And, when the trial
judge specifically asked Mr. Stauder how he pled after the indictment was
read aloud, appellant answered, Not guilty. 
To this, we add appellants own testimony when appearing on the witness
stand wherein he expressly identified himself as Thomas Joseph Stauder, II and described how he possessed the prohibited
device.  This and the reasonable
inferences that can be made from it were enough to enable a factfinder to
conclude, beyond reasonable doubt, that appellant was the person found in the
possession of and indicted and tried for the crime at issue.  See Sauceda v. State, No. 07-03-0342-CR, 2005 Tex. App. Lexis 7375, at *3-5 (Tex. App.Amarillo
September 6, 2005, no pet.) (not designated for publication) (holding the
evidence legally and factually sufficient when the defendant admitted he was
the person named in the indictment, when three witnesses testified that they
knew the defendant, Joseph Sauceda, and no objection was made to the
identification procedure).  

Constitutionality
of Statute

Next, appellant argues that §46.05(8) is unconstitutionally
vague.  We overrule the issue.

The same argument was addressed in Briggs
v. State.  Like appellant here, Briggs was tried and
convicted of having a smoke or tear gas grenade.  Furthermore, the evidence there reveals the
substance within the grenade to have a like effect as that in the grenade
here.  And, it too was made for riot
control.  Given this, Briggs conduct was
found to be clearly within the core of the conduct proscribed by the
statute.  Briggs v. State, 746 S.W.2d at 333. 
And, because one to whose conduct a statute clearly applies may not
successfully challenge it for vagueness, Parker v. Levy, 417 U.S. 733, 756, 41 L.Ed.2d 439, 94 S.Ct. 2547 (1974), Briggs lacked standing to pursue the vagueness
allegation.  Briggs
v. State, 746 S.W.2d at 333. 
The same is no less true here.  

 

 

Mistake of Law[2]

 Finally, appellant
asserts that no reasonable factfinder could but conclude that he acted under
the reasonable belief that his conduct was lawful.  This belief was founded upon his reading of Briggs
v. State, 714 S.W.2d 36
(Tex. App.Dallas 1986), vacated, 740 S.W.2d 803 (Tex. Crim. App. 1987).  We overrule the issue for the simple reason
that had he studied the litany of Briggs cases, he would have discovered that
Briggs conviction for unlawfully possessing a chemical dispensing device
ultimately was upheld.  And, it was
upheld because having a tear gas grenade akin to the item at issue here clearly
falls within the scope of conduct prohibited by the statute.  Briggs v. State, 746 S.W.2d at 333.  

Appellant admitted at trial that he did not completely review
the second Briggs  opinion (that is, the one issued
by the Court of Criminal Appeals vacating the one he allegedly read) or the
third Briggs
decision wherein Briggs
conduct was found to clearly be within the statutes scope.  So, at the very least, the factfinder could
have found that he did not reasonably rely upon a written interpretation of the
law.  See Green v. State, 829 S.W.2d 222, 223 (Tex. Crim. App.
1992) (stating that Section 8.03[3]
was not created to allow a criminal defendant to rely upon old interpretive
opinions, opinions that conflict with others, or on overruled opinions).

And, to the extent that he testified that he did not know
that possessing the grenade was prohibited by statute, we can only say that
ignorance of the law is not an excuse. 
This is especially true given his knowledge about the dispute in Briggs.   At the very least,
the factfinder could have opted to disbelieve him.

 Accordingly, we
overrule all of appellants issues and affirm the judgment. 

 

                                                                        Brian
Quinn 

                                                                        Chief
Justice   

Do not publish.  











[1]John T. Boyd, Senior Justice, sitting by assignment.





[2]Appellant
states in the title of his issue that there was also a mistake of fact but he
has failed to brief that complaint.  





[3]Section
8.03 of the Penal Code states that it is an affirmative defense to prosecution
that a person reasonably believed the conduct did not constitute a crime and
that, in doing so, he relied upon a written interpretation of the law contained
in an opinion of a court of record.  Tex. Penal Code Ann. §8.03(b)(2)
(Vernon 2003).