Opinion issued May 4, 2006
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00365-CR




SHERWIN JARMON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1000896




O P I N I O N

          A jury found appellant, Sherwin Jarmon, guilty of aggravated robbery and 
assessed his punishment at confinement for six years and a fine of $500.


 See Tex.
Pen. Code Ann. § 29.03(a). In a single point of error, appellant contends that the
trial court acted in contradiction of Texas Rules of Evidence 404(b) and 403 when it
admitted extraneous offense evidence against him for the purpose of proving identity. 
          We affirm. 
BACKGROUND
          Kenneth Gaw, Jennifer Roth,


 and Misty Hennington were robbed at gunpoint
shortly before midnight on June 26, 2004. The three friends were smoking cigarettes
in a breezeway located in Gaw and Hennington’s apartment complex


 when they were
approached by two men, one of whom placed a gun to Roth’s head and stated,
“Here’s what I need: I need your purse, I need your wallet, I need your money.” Roth
surrendered her purse and Gaw handed over his wallet. The gunman then pulled
Gaw’s cell phone from his belt and ordered Gaw and Roth to turn their backs and
walk toward Gaw’s apartment. Hennington, the complainant, remained behind
momentarily. The gunman placed the gun at her back and stated, “I know you have
something, I know you have something.” After Hennington handed over her cell
phone, the gunman asked for her keys. Hennington said she did not have any keys
with her, and she was then instructed by the gunmen to walk away. While doing so,
Hennington glanced over her shoulder and saw the gunman and his accomplice run
off. Gaw, Roth, and Hennington then entered Gaw’s and Hennington’s apartment and
telephoned 9-1-1. An officer was dispatched in response to the 9-1-1 call at 12:05
a.m. on June 27, 2004.
          Approximately four to five days after the robbery, Gaw, Roth, and Hennington
were contacted by Officer Colleen Guidry, a robbery investigator with the Houston
Police Department. Guidry showed them a photo line-up of suspects that included
appellant’s photograph. Gaw and Roth were unable to identify appellant, but
Hennington, who testified that she had made a conscious effort during the robbery to
“see who was doing it,” positively identified appellant. Hennington subsequently
also identified appellant in open court. 
          Following the testimony of Gaw,


 who was unable to identify appellant, the
State, pursuant to Texas Rule of Evidence 404(b), sought to admit extraneous-offense
evidence to prove appellant’s identity.


 The State wanted to admit extraneous-offense
evidence that pertained to the aggravated robbery of Adnane Kidari on June 26,
2004.


 Appellant objected that admission of the evidence would violate Rule 404(b)
because the extraneous offense was not closely enough related to the robbery of Haw,
Roth, and Hennington


 and because the probative value of the evidence would be
substantially outweighed by its prejudicial effect.


 The trial court withheld its ruling
on the State’s request until after the testimony of Roth and Hennington. After hearing
Roth’s and Hennington’s testimony, and over appellant’s objections, the trial court
allowed the State to introduce extraneous-offense evidence pertaining to the robbery
of Kidari. 
          Kidari testified that, around midnight on June 26, 2004, he was robbed at
gunpoint as he returned home from work. Two men exited a white Infiniti
automobile and approached Kidari. One of the men pulled out a handgun and
demanded Kidari’s cell phone, wallet, and keys. Kidari handed over the requested
items and was told to lie on the ground. The robbers then searched his pockets while
holding Kidari’s head to the ground and hitting him with the base of the gun. The
robbers then fled in the Infiniti, but not before Kidari was able to record the
automobile’s license plate number. Kidari telephoned 9-1-1 from his apartment, and
police officers were dispatched to the scene at 11:45 p.m.—approximately 20 minutes
before officers were dispatched to the Haw, Roth, and Hennington robbery. Shortly
after the incident, Kidari was contacted by Officer Guidry and shown a photo line up
that included a photograph of appellant. Although Kidari did not positively identify
appellant, he did state that one of his assailants “looked pretty much like number 5.” 
Appellant’s photograph was marked “number 5” in the photo-line up shown to Kidari. 
          Officer Guidry also testified that Kidari provided her with the license plate
number of the Infiniti used in his robbery. The automobile was registered to
Keburnesh Besrat, who was contacted by police shortly after the robbery. Besrat
stated that her son, Mateyas Alem, often drove her car. Guidry contacted Alem, who
became a suspect in the two robberies. Appellant, who attended high school with
Alem, also emerged as a suspect through Guidry’s contact with Alem. Guidry further
testified that the robberies of Kidari and of Haw, Roth, and Hennington occurred at
locations no more than three miles apart, a distance she stated could be driven in five
or six minutes. As noted, police were dispatched to the Kidari robbery at 11:45 p.m.
on June 26 and to the Haw, Roth, and Hennington robbery at approximately 12:05
a.m. on June 27. During the punishment phase of his trial, appellant admitted his
guilt. 
DISCUSSION
          Appellant contends that the trial court erred in admitting extraneous offense
evidence pertaining to the robbery of Kidari. Appellant specifically contends that 
admission of the extraneous offense evidence was in contradiction of Rule 404(b)
because the robbery of Kidari was not sufficiently similar to the charged offense. See
Johnson, 68 S.W.3d at 651. He further argues that the probative value of the
extraneous offense evidence was substantially outweighed by its prejudicial effect. 
See Tex. R. Evid. 403. We need not address the merits of appellant’s complaints,
however, as we find that, pursuant to the DeGarmo doctrine,


 he is estopped from
challenging the admission of the extraneous offense evidence at issue.
          Estoppel Under the DeGarmo Doctrine
          The court of criminal appeals held in DeGarmo v. State that a defendant who
has been found guilty of a crime and who admits his guilt during the trial’s
punishment phase is barred from contesting on appeal an error that occurred during
the guilt-innocence phase of the trial. See 691 S.W. 2d 657, 661 (Tex. Crim. App.
1985), cert. denied, 474 U.S. 973, 106 S. Ct. 337 (1985). The rationale for the
DeGarmo doctrine flows from the immediate functional goal of a trial—determining
truth. See Leday v. State, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998). According
to the doctrine, once a defendant admits his guilt to the charged offense, a trial’s
truth-seeking function is effectively concluded; hence there is no purpose in
reviewing any errors that may have occurred because they no longer have any bearing
on the determination of truth. See id.
          In 1998, the court of criminal appeals sharply curtailed the applicability of the
DeGarmo doctrine. Leday, 983 S.W.2d at 724–26. The court based its retrenchment
on an understanding that “ascertainment of truth is not the only objective of our law
of criminal procedure.” Id. at 724–25. Rather, within the United States criminal
justice system, the protection of certain due process and individual rights is
considered of paramount importance, even when such protection may impinge upon
a trial’s truth-seeking function. See id. In view of the value our society places on
these rights, Leday held that the DeGarmo doctrine cannot estop criminal defendants
from raising on appeal any matter that implicates a “value seen to be more important
than the discovery of truth in a trial.” Id. at 725. The court provided an admittedly
incomplete list of such rights:
•Through the Due Process Clauses of the Fifth and Fourteenth
Amendments, Americans require that the judgment in a criminal
trial be supported by proof beyond a reasonable doubt.


 We do
so knowing that some people who seem guilty will be acquitted.
 
•Through the Double Jeopardy Clause of the Fifth Amendment,
Americans say that a person may not be subjected to a second trial
after an acquittal even where there is clear evidence of guilt. 
 
•Through the Self-Incrimination Clause of the Fifth Amendment
our people have required that a defendant may not be required to
give incriminating testimony against himself, and that there be no
comment on a defendant’s failure to testify.
 
•Through the Due Process Clause of the Fourteenth Amendment,
Americans have decided that truthful confessions obtained as a
result of coercion or improper inducement may not be introduced
in criminal trials. 
 
•Through the Fourth Amendment our nation has forbidden the
government to acquire evidence through unreasonable search or
seizure, or by general warrants, and it has decided that evidence
so obtained be excluded from criminal trials. 
 
•Through the delegation of legislative authority to this Court, the
people of our state have decided that privileged evidence should
be excluded from criminal trials. 
 
•Texans also have decided through their legislatures that
statements made as a result of custodial interrogation not be
admitted in criminal trials if they do not meet certain formal
requirements. They have decided that criminal defendants may
not be convicted on the uncorroborated testimony of an adult
victim of a sexual offense who did not make outcry within a year,
or the uncorroborated testimony of an accomplice. 
 
•By exercising the judicial authority given this Court in the Texas
Constitution, we have held that jurors should not be allowed to
propound questions to witnesses because such a procedure would
endanger the adversary system.

Id. at 725 (citations omitted) (emphasis added). 
          Post-Leday, when issues are raised on appeal by an appellant who admitted his
guilt during the punishment phase of his trial, a reviewing court must “determine if
appellant asserts fundamental rights or guaranties [which he cannot be estopped from
asserting], or whether the truth-finding function prevails to estop appellant from
rasing them.” Gutierrez v. State, 8 S.W.3d 739, 745 (Tex. App.—Austin 1999, no
pet.); see also Kelley v. State, 22 S.W.3d 628, 631 (Tex. App.—Fort Worth 2000, pet.
ref’d) (holding that alleged jury charge error did not implicate fundamental right and
DeGarmo doctrine prevented review). Here, appellant unequivocally admitted his
guilt during the punishment phase of his trial. Thus, he is estopped from raising his
point of error on appeal unless we determine that the admission of legally obtained
extraneous offense evidence implicates a fundamental right. We hold that it does not. 
          In reaching this conclusion, we first note that appellant does not challenge the
sufficiency of the evidence; he complains only of the trial court’s discretionary
determination to admit testimony regarding the robbery of Kidari. See Resendez, 160
S.W.3d at 184 (holding that defendant admitting guilt during punishment phase does
not waive right to challenge sufficiency of evidence on appeal). Second, appellant
does not contend that the complained of evidence was obtained illegally, and no
evidence in the record would support such a contention. Leday makes clear that a
defendant’s admission of guilt will not prevent him from complaining on appeal that
illegally obtained evidence was used against him during his trial. Leday, 983 S.W.2d
at 725. When evidence is obtained illegally, rights that transcend a trial’s truth-
finding function are implicated. See id. Conversely, decisions by a trial court as to
whether to admit certain evidence made pursuant to procedural rules are constituent
elements of a trial’s-truth finding objective. Third, and relatedly, courts typically
treat the improper admission of extraneous evidence as non-constitutional error. See
Martin v. State, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.);
Johnson v. State, 84 S.W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d); Peters v. State, 93 S.W.3d 347, 354 (Tex. App.—Houston [14th Dist.] 2002,
pet. ref’d). 
          Fourth, appellant points us to no authority, nor can we find any, holding that
a trial court’s decision to admit legally obtained extraneous-offense evidence
implicates a fundamental right.


 Instead, appellant relies on Resendez for the
proposition that a defendant’s admission of guilt does not waive a court’s erroneous
admission of evidence. 160 S.W.3d at 184. Resendez does indeed make such a
statement, but only in reference to Leday, which addressed whether or not an
appellant who admitted his guilt during the punishment phase of his trial could be
estopped from challenging the admissibility of evidence he claimed was illegally
seized. Thus, we do not read Leday to hold that appellate challenges to all
evidentiary rulings on the admissibility of evidence are immune from estoppel under
the DeGarmo doctrine, but only those evidentiary rulings in which a fundamental
right has been implicated. Here, as noted, appellant does not contend that the
evidence in question was illegally seized. Finally, we note that if the evidentiary
ruling at issue here is not subject to the DeGarmo doctrine, then few, if any,
evidentiary rulings are. In such a case, the doctrine itself would be swallowed by its
exceptions. In Leday, however, the court of criminal appeals did not overrule the
DeGarmo doctrine; rather, it limited its application to matters that did not invoke
fundamental guaranties or constitutional rights. Leday, 983 S.W.2d at 724–26. 
          In view of the foregoing discussion, we hold that application of the DeGarmo
doctrine, as modified by Leday, precludes appellant from raising his point of error on
appeal. Because appellant is estopped from challenging the admission of extraneous-
offense evidence, we overrule his sole point of error. 
 
 
CONCLUSION
          We affirm the judgment of the trial court. 
 


                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Hanks.
Publish. Tex. R. App. P. 47.4.