**Sherwin JARMON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–05–00365–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 4, 2006.

Discretionary Review Refused Aug. 30, 2006.

Alex G. Azzo, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Kevin P. Keating, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Sherwin Jarmon, guilty of aggravated robbery and assessed his punishment at confinement for six years and a fine of $500.[1] *See* TEX. PEN. CODE ANN. § 29.03(a). In a single point of error, appellant contends that the trial court acted in contradiction of Texas Rules of Evidence 404(b) and 403 when it admitted extraneous offense evidence against him for the purpose of proving identity.

We affirm.

## BACKGROUND

Kenneth Gaw, Jennifer Roth,[2] and Misty Hennington were robbed at gunpoint shortly before midnight on June 26, 2004. The three friends were smoking cigarettes in a breezeway located in Gaw and Hennington's apartment complex[3] when they were approached by two men, one of whom placed a gun to Roth's head and stated, "Here's what I need: I need your purse, I need your wallet, I need your money." Roth surrendered her purse and Gaw handed over his wallet. The gunman then pulled Gaw's cell phone from his belt and ordered Gaw and Roth to turn their backs and walk toward Gaw's apartment. Hennington, the complainant, remained behind momentarily. The gunman placed the gun at her back and stated, "I know you have something, I know you have something." After Hennington handed over her cell phone, the gunman asked for her keys. Hennington said she did not have any keys with her, and she was then instructed by the gunmen to walk away. While doing so, Hennington glanced over her shoulder and saw the gunman and his accomplice run off. Gaw, Roth, and Hennington then entered Gaw's and Hennington's apartment and telephoned 9–1–1. An officer was dis-

---

1. Appellant was a juvenile when the incident in question occurred. He was initially the subject of a petition alleging that he engaged in delinquent conduct. After the juvenile court waived its jurisdiction, a Harris County grand jury returned an indictment against appellant charging him with aggravated robbery.

2. Prior to the trial, Roth was married and changed her surname to Murray.

3. Gaw and Hennington were roommates.

patched in response to the 9–1–1 call at 12:05 a.m. on June 27, 2004.

Approximately four to five days after the robbery, Gaw, Roth, and Hennington were contacted by Officer Colleen Guidry, a robbery investigator with the Houston Police Department. Guidry showed them a photo line-up of suspects that included appellant's photograph. Gaw and Roth were unable to identify appellant, but Hennington, who testified that she had made a conscious effort during the robbery to "see who was doing it," positively identified appellant. Hennington subsequently also identified appellant in open court.

Following the testimony of Gaw,[4] who was unable to identify appellant, the State, pursuant to Texas Rule of Evidence 404(b), sought to admit extraneous-offense evidence to prove appellant's identity.[5] The State wanted to admit extraneous-offense evidence that pertained to the aggravated robbery of Adnane Kidari on June 26, 2004.[6] Appellant objected that admission of the evidence would violate Rule 404(b) because the extraneous offense was not closely enough related to the robbery of Haw, Roth, and Hennington[7] and because the probative value of the evidence would be substantially outweighed by its prejudicial effect.[8] The trial court withheld its ruling on the State's request until after the testimony of Roth and Hennington. After hearing Roth's and Hennington's testimony, and over appellant's objections, the trial court allowed the State to introduce extraneous-offense evidence pertaining to the robbery of Kidari.

Kidari testified that, around midnight on June 26, 2004, he was robbed at gunpoint as he returned home from work. Two men exited a white Infiniti automobile and approached Kidari. One of the men pulled out a handgun and demanded Kidari's cell phone, wallet, and keys. Kidari handed over the requested items and was told to lie on the ground. The robbers then searched his pockets while holding Kidari's head to the ground and hitting him with the base of the gun. The robbers then fled in the Infiniti, but not before Kidari was able to record the automobile's license plate number. Kidari telephoned 9–1–1 from his apartment, and police officers were dispatched to the scene at 11:45 p.m.—approximately 20 minutes before officers were dispatched to the Haw, Roth,

4. Gaw was the first witness called by the State, testifying before Hennington and Roth.

5. Texas Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising from the same transaction.

TEX.R. EVID. 404(b).

6. Appellant contends that the State introduced evidence pertaining to two extraneous offenses. It is apparent from the record, however, that the extraneous offense evidence introduced by the State related only to the robbery of Kidari.

7. When identity is contested, an extraneous offense may be admitted to prove identity, but only when the extraneous offense and the charged offense are sufficiently similar. See Johnson v. State, 68 S.W.3d 644, 650–51 (Tex. Crim.App.2002). Courts consider a variety of factors when determining whether an extraneous offense is sufficiently similar for admission to show identity, including (1) specific characteristics of the extraneous offense and the charged offense and (2) the time interval between offenses. See id.

8. TEX.R. EVID. 403.

and Hennington robbery. Shortly after the incident, Kidari was contacted by Officer Guidry and shown a photo line up that included a photograph of appellant. Although Kidari did not positively identify appellant, he did state that one of his assailants "looked pretty much like number 5." Appellant's photograph was marked "number 5" in the photo-line up shown to Kidari.

Officer Guidry also testified that Kidari provided her with the license plate number of the Infiniti used in his robbery. The automobile was registered to Keburnesh Besrat, who was contacted by police shortly after the robbery. Besrat stated that her son, Mateyas Alem, often drove her car. Guidry contacted Alem, who became a suspect in the two robberies. Appellant, who attended high school with Alem, also emerged as a suspect through Guidry's contact with Alem. Guidry further testified that the robberies of Kidari and of Haw, Roth, and Hennington occurred at locations no more than three miles apart, a distance she stated could be driven in five or six minutes. As noted, police were dispatched to the Kidari robbery at 11:45 p.m. on June 26 and to the Haw, Roth, and Hennington robbery at approximately 12:05 a.m. on June 27. During the punishment phase of his trial, appellant admitted his guilt.

### DISCUSSION

Appellant contends that the trial court erred in admitting extraneous offense evidence pertaining to the robbery of Kidari. Appellant specifically contends that admission of the extraneous offense evidence was in contradiction of Rule 404(b) because the robbery of Kidari was not sufficiently similar to the charged offense. *See John-*

son, 68 S.W.3d at 651. He further argues that the probative value of the extraneous offense evidence was substantially outweighed by its prejudicial effect. *See* Tex.R. Evid. 403. We need not address the merits of appellant's complaints, however, as we find that, pursuant to the *DeGarmo* doctrine,[9] he is estopped from challenging the admission of the extraneous offense evidence at issue.

### *Estoppel Under the DeGarmo Doctrine*

The court of criminal appeals held in *DeGarmo v. State* that a defendant who has been found guilty of a crime and who admits his guilt during the trial's punishment phase is barred from contesting on appeal an error that occurred during the guilt-innocence phase of the trial. *See* 691 S.W.2d 657, 661 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985). The rationale for the *DeGarmo* doctrine flows from the immediate functional goal of a trial—determining truth. *See Leday v. State,* 983 S.W.2d 713, 724 (Tex.Crim.App.1998). According to the doctrine, once a defendant admits his guilt to the charged offense, a trial's truth-seeking function is effectively concluded; hence there is no purpose in reviewing any errors that may have occurred because they no longer have any bearing on the determination of truth. *See id.*

In 1998, the court of criminal appeals sharply curtailed the applicability of the *DeGarmo* doctrine. *Leday,* 983 S.W.2d at 724–26. The court based its retrenchment on an understanding that "ascertainment of truth is not the only objective of our law of criminal procedure." *Id.* at 724–25. Rather, within the United States criminal justice system, the protection of certain due process and individual rights is consid-

---

9. *See DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985)

ered of paramount importance, even when such protection may impinge upon a trial's truth-seeking function. *See id.* In view of the value our society places on these rights, *Leday* held that the *DeGarmo* doctrine cannot estop criminal defendants from raising on appeal any matter that implicates a "value seen to be more important than the discovery of truth in a trial." *Id.* at 725. The court provided an admittedly incomplete list of such rights:

- Through the Due Process Clauses of the Fifth and Fourteenth Amendments, Americans require that the judgment in a criminal trial be supported by *proof beyond a reasonable doubt.*[10] We do so knowing that some people who seem guilty will be acquitted.

- Through the *Double Jeopardy* Clause of the Fifth Amendment, Americans say that a person may not be subjected to a second trial after an acquittal even where there is clear evidence of guilt.

- Through the *Self–Incrimination* Clause of the Fifth Amendment our people have required that a defendant may not be required to give incriminating testimony against himself, and that there be no comment on a defendant's failure to testify.

- Through the Due Process Clause of the Fourteenth Amendment, Americans have decided that truthful *confessions obtained as a result of coercion* or improper inducement may not be introduced in criminal trials.

- Through the Fourth Amendment our nation has forbidden the government to acquire evidence through *unreasonable search or seizure,* or by general warrants, and it has decided that evidence so obtained be excluded from criminal trials.

- Through the delegation of legislative authority to this Court, the people of our state have decided that *privileged evidence* should be excluded from criminal trials.

- Texans also have decided through their legislatures that *statements made as a result of custodial interrogation* not be admitted in criminal trials if they do not meet certain formal requirements. They have decided that criminal defendants may not be convicted on the uncorroborated testimony of an adult victim of a sexual offense who did not make outcry within a year, or the uncorroborated testimony of an accomplice.

- By exercising the judicial authority given this Court in the Texas Constitution, we have held that *jurors should not be allowed to propound questions to witnesses* because such a procedure would endanger the adversary system.

*Id.* at 725 (citations omitted) (emphasis added).

Post-*Leday,* when issues are raised on appeal by an appellant who admitted his guilt during the punishment phase of his trial, a reviewing court must "determine if appellant asserts fundamental rights or guaranties [which he cannot be estopped from asserting], or whether the truth-finding function prevails to estop appellant from raising them." *Gutierrez v. State,* 8 S.W.3d 739, 745 (Tex.App.-Austin 1999, no pet.); *see also Kelley v. State,* 22 S.W.3d 628, 631 (Tex.App.-Fort Worth 2000, pet. ref'd) (holding that alleged jury charge error did not implicate fundamental right

---

10. A defendant's fundamental right to go free unless his guilt is proven beyond a reasonable doubt has been interpreted to mean that a legal sufficiency challenge is not waived by a defendant's admission of guilt at the punishment phase of trial. *See Resendez v. State,* 160 S.W.3d 181, 184 (Tex.App.-Corpus Christi 2005, no pet.).

and *DeGarmo* doctrine prevented review). Here, appellant unequivocally admitted his guilt during the punishment phase of his trial. Thus, he is estopped from raising his point of error on appeal unless we determine that the admission of legally obtained extraneous offense evidence implicates a fundamental right. We hold that it does not.

In reaching this conclusion, we first note that appellant does not challenge the sufficiency of the evidence; he complains only of the trial court's discretionary determination to admit testimony regarding the robbery of Kidari. *See Resendez*, 160 S.W.3d at 184 (holding that defendant admitting guilt during punishment phase does not waive right to challenge sufficiency of evidence on appeal). Second, appellant does not contend that the complained of evidence was obtained illegally, and no evidence in the record would support such a contention. *Leday* makes clear that a defendant's admission of guilt will not prevent him from complaining on appeal that illegally obtained evidence was used against him during his trial. *Leday*, 983 S.W.2d at 725. When evidence is obtained illegally, rights that transcend a trial's truth-finding function are implicated. *See id.* Conversely, decisions by a trial court as to whether to admit certain evidence made pursuant to procedural rules are constituent elements of a trial's-truth finding objective. Third, and relatedly, courts typically treat the improper admission of extraneous evidence as non-constitutional error. *See Martin v. State*, 176 S.W.3d 887, 897 (Tex.App.-Fort Worth 2005, no pet.); *Johnson v. State*, 84 S.W.3d 726, 729 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); *Peters v. State*, 93 S.W.3d 347, 354 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd).

Fourth, appellant points us to no authority, nor can we find any, holding that a trial court's decision to admit legally obtained extraneous-offense evidence implicates a fundamental right.[11] Instead, appellant relies on *Resendez* for the proposition that a defendant's admission of guilt does not waive a court's erroneous admission of evidence. 160 S.W.3d at 184. *Resendez* does indeed make such a statement, but only in reference to *Leday*, which addressed whether or not an appellant who admitted his guilt during the punishment phase of his trial could be estopped from challenging the admissibility of evidence he claimed was illegally seized. Thus, we do not read *Leday* to hold that appellate challenges to all evidentiary rulings on the admissibility of evidence are immune from estoppel under the *DeGarmo* doctrine, but only those evidentiary rulings in which a fundamental right has been implicated. Here, as noted, appellant does not contend that the evidence in question was illegally seized. Finally, we note that if the evidentiary ruling at issue here is not subject to the *DeGarmo* doctrine, then few, if any, evidentiary rulings are. In such a case, the doctrine itself would be swallowed by its exceptions. In *Leday*, however, the court of criminal appeals did not overrule the *DeGarmo* doctrine; rather, it limited its application to matters that did not invoke fundamental guaranties or constitutional rights. *Leday*, 983 S.W.2d at 724–26.

In view of the foregoing discussion, we hold that application of the *DeGarmo* doctrine, as modified by *Leday*, precludes appellant from raising his point of error on

---

**11.** Rather, the Austin Court of Appeals recently issued an opinion holding that appellants are estopped from challenging the admission of extraneous-offense evidence on appeal if they admit their guilt at the punishment phase of the trial. *See Houston v. State*, 208 S.W.3d 585, 591 (Tex.App.-Austin 2006, no pet. h.).

appeal. Because appellant is estopped from challenging the admission of extraneous-offense evidence, we overrule his sole point of error.

### CONCLUSION

We affirm the judgment of the trial court.