# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00446-CR

**Rubert Lay Rice, Appellant**

**v.**

**State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368th JUDICIAL DISTRICT, NO. 07-757-K368, HONORABLE JACK R. MILLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Rubert Lay Rice of the offense of possession of a firearm by a felon and assessed punishment at ten years' imprisonment. *See* Tex. Penal Code § 46.04 (West Supp. 2008). In a single point of error, Rice contends that the trial court abused its discretion by admitting evidence of certain extraneous bad acts and unadjudicated offenses. We affirm the trial court's judgment of conviction.

## BACKGROUND

On April 16, 2006, Rice traveled to Leander, Texas, to visit his daughter, A.J., who had just celebrated her fifth birthday. A.J.'s mother and Rice's former girlfriend, Annalise Clayborne, had invited Rice to attend A.J.'s birthday party held earlier in the day. Rice, however, was unable to arrive in time for the party because of transportation problems. Later that

1

afternoon, Rice was able to get a ride with his uncle, and the two of them drove from Houston to Leander to visit with A.J. Rice brought a large box with him that contained a birthday present for A.J. When Rice arrived, he placed the box in the trunk of Clayborne's car and then visited with his daughter for about an hour and a half before returning to Houston with his uncle. Around 1:00 a.m. the next morning, Rice called Clayborne from Houston, alerting her that he had inadvertently left a pistol in the as yet unopened gift box and that he would be back the next day to pick it up. According to Clayborne, Rice told her that the weapon was his and that it was wrapped up so that, in the event he was pulled over by the police, it would look like another present.

Later that morning, Clayborne looked inside the large box and found A.J.'s present, a child's table, chair and umbrella set. Besides the table set, she also found a red jewelry-like box wrapped in cellophane. She opened the red box and found a pistol inside. Clayborne's husband, Keith Clayborne,[1] retrieved the pistol from the box and noticed that it had a loaded magazine. The Claybornes then called the Leander Police Department to unload and take possession of the pistol.

Leander Police Officer Pamela Hernandez responded to the call. At trial, she identified the gun as a 9mm Ruger—a semiautomatic pistol. Hernandez testified that the gun's chamber was empty, but that there were bullets in the magazine, plus a single bullet inside a clear plastic bag. After the police investigators learned that Rice had previously been convicted of felony possession of marihuana, he was charged with possession of a firearm by a felon.

---

[1] Because Keith Clayborne shares the same surname as Annalise Clayborne, the State's key witness, we will refer to him by his first name. We will continue to refer to Annalise Clayborne as "Clayborne."

2

*See* Tex. Health & Safety Code Ann. § 481.121 (West 2003) (establishing offense of possession of marihuana); Tex. Penal Code Ann. § 46.04 (establishing offense of possession of firearm by felon).

At trial, the main contested issue was whether Rice's possession of the pistol was knowing, intentional, and voluntary. Armfreeds Rice,[2] Rice's mother, testified that she had placed the pistol in the box containing A.J.'s present. Armfreeds testified that she found the red box containing the gun inside the cab of Rice's father's pick-up truck when she borrowed the truck to go shopping for A.J.'s birthday present on April 15, 2006.[3] According to Armfreeds, she did not feel safe with the gun in the cab, so she placed it inside the box containing A.J.'s present, which was in the truck bed. Armfreeds testified that she forgot to take the gun out of the gift box before Rice and his uncle left for Leander in the truck later that same day. Armfreeds said that when she remembered about an hour after Rice left for Leander, she called him on his cell phone and told him the pistol was in the gift box and asked him to remove the pistol before giving the gift to A.J.

Clayborne, on the other hand, testified that Rice had told her, both in the 1:00 a.m. phone call and in a message left the next day, that "it was his [gun] and he was going to come and pick it up." The State also introduced a recording of a controlled call that the police directed Clayborne to place to Rice on Monday, April 17, 2006. During the controlled call, Clayborne asked

---

[2] Because Armfreeds Rice shares the same surname as the appellant in this case, we will refer to her by her first name. We will continue to refer to the appellant as "Rice."

[3] Clayborne testified that the box was wrapped in red cellophane. Rice's mother, Armfreeds Rice, testified that the box was unwrapped but the pistol within it was wrapped in translucent red cellophane.

3

Rice why he brought the weapon with him, and Rice responded, "I carry my weapon with me everywhere I fucking go."

Over defense objections, the State also questioned Clayborne about voice messages she had received from Rice the weekend of April 15-16, 2006. Clayborne testified that Rice had threatened her husband in the messages, saying, "Don't let me lay eyes on [Keith] or I'm going to fuck him up and beat his ass." The State argued that the messages were evidence of Rice's motive for intentionally bringing the gun with him to Leander. Rice contends that the admission of this evidence constituted reversible error. Rice also argues that the trial court erred when it declined to declare a mistrial after Clayborne improperly testified that Rice had been "in and out" of prison.

A jury found Rice guilty of the offense of possession of a firearm by a felon. At the punishment phase of trial, Rice testified that his mother had called him while he was traveling from Houston to Leander and told him about the gun being in the box containing his daughter's present. Rice, however, denied that it was his gun. The jury assessed his punishment at ten years' imprisonment.

## DISCUSSION

### Applicability of *DeGarmo*

On appeal, Rice complains that the trial court erred in admitting evidence of extraneous bad acts and offenses. *See* Tex. R. Evid. 403 (authorizing exclusion of relevant evidence when probative value is substantially outweighed by danger of unfair prejudice), 404(b) (limiting admission of extraneous-acts evidence). The State responds that Rice is estopped from challenging the admission of extraneous-acts evidence on appeal because he admitted that he was guilty of the

4

current offense at the punishment phase of the trial,[4] citing to *DeGarmo v. State*, 691 S.W.2d 657, 660-61 (Tex. Crim. App. 1985).  In *DeGarmo*, the court of criminal appeals held that a defendant may not complain on appeal of an error occurring at the guilt phase of the trial when the defendant admits his guilt at the punishment phase of trial.  691 S.W.2d at 661.  The rationale for the *DeGarmo* doctrine flows from the immediate functional goal of a trial—determining truth.  *See Leday v. State*, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998).  Under this doctrine:  "When the defendant testifies and judicially confesses to the charged offense, the purpose of the trial process has been served—the truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied.  No reversible error should occur where the defendant has satisfied the necessity of the trial process."  *McGlothlin v. State,* 896 S.W.2d 183, 187 (Tex. Crim. App. 1995).

Later decisions, however, have blurred the seemingly bright-line rule that a defendant who admits guilt at the punishment phase waives a challenge to any error that might have occurred during the guilt phase of the trial.  In *Leday*, the court sharply curtailed the applicability of the *DeGarmo* doctrine.  983 S.W.2d at 725.  The court based its retrenchment on an understanding that "ascertainment of truth is not the only objective of our law of criminal procedure."  *Id.* at 724-25.  Rather, within the United States criminal justice system, the protection of certain due process and individual rights is considered of paramount importance, even when such protection may impinge upon a trial's truth-seeking function.  *See id.*

---

[4] During the punishment phase, Rice admitted that his mother had called him while he was traveling to Leander and told him about the gun being in the box containing A.J.'s gift.  At trial, it was undisputed that Rice physically placed the box containing the gift and the gun into Annalise's trunk.  Thus, when Rice, a convicted felon, transferred the box, he arguably knowingly "possessed" the firearm.

5

*Leday* did not specifically address whether an erroneous admission of extraneous-acts evidence under rules 403 and 404(b) would fall into the category of error that involves fundamental rights. *See* Tex. R. Evid. 403, 404(b). This Court, however, was faced with that exact question in *Houston v. State*, 208 S.W.3d 585, 590 (Tex. App.—Austin 2006, no pet.). In *Houston*, this Court reviewed rules 403 and 404(b) and the case law interpreting them and concluded that the purpose of the rules "is to achieve a verdict based on relevant facts rather than through confusion of the issues, unfair prejudice, misleading the jury, or any improper inferences. At their heart, these rules serve as safeguards of the truth-seeking function." *Id.* at 591 (footnote omitted); *see also* Tex. R. Evid. 403, 404(b). The court then held that "a violation of these rules is the type of error that a defendant is estopped from raising on appeal if he has made a judicial confession." *Houston*, 208 S.W.3d at 591; *see also Jarmon v. State*, 263 S.W.3d 25, 30 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that admission of legally obtained extraneous-acts evidence does not implicate fundamental rights); *D'Costa v. State*, No. 07-01-0047-CR, 2001 Tex. App. LEXIS 5192, at *4 (Tex. App.—Amarillo Aug. 1, 2001, no pet.) (mem. op., not designated for publication) (holding that complaints regarding admission of extraneous-acts evidence "do not implicate fundamental guaranties or constitutional rights").

Thus, under *Houston*, if Rice's comments at the punishment phase can be fairly characterized as a "judicial confession," then he is estopped from challenging these evidentiary errors on appeal. Rice's comments, however, while incriminating, do not fit clearly in the judicial confession category. *See Taulung v. State*, 979 S.W.2d 854, 857 (Tex. App.—Waco 1998, no pet.) (holding that, to trigger *DeGarmo*, confession must be "clear and intentional"). Rather, it appears

6

that Rice merely confirmed the facts supporting his defensive theory of the case, that it was not his gun and that he did not possess the gun intentionally or knowingly.[5]  For there to have been a confession, Rice needed to acknowledge that it was his gun and that he knowingly brought the gun with him.  *See McGlothlin*, 896 S.W.2d at 188 (under *DeGarmo*, reviewing court should carefully examine elements of offense to ensure that defendant's statements actually constitute judicial confession of offense charged); *Avila v. State*, 954 S.W.2d 830, 835 (Tex. App.—El Paso 1997, pet. ref'd) (holding that, to waive error under *DeGarmo*, defendant must intend to admit charged offense).  Because Rice's comments during the punishment phase of the trial do not fall squarely within the judicial confession category, we hold that Rice is not estopped from raising evidentiary issues under the *DeGarmo* doctrine and we will address his specific complaints regarding the admission of extraneous-acts evidence during the guilt-innocence phase of the trial.

**Evidentiary Errors**

Rice complains that the trial court erred in its rulings regarding the evidence of extraneous offenses and bad acts.  This evidence was admitted through the testimony of Clayborne, who testified that Rice had been "in and out" of prison and testified that Rice had left threatening messages on her voice mail.  In addition to objecting to the evidence, Rice moved for a mistrial and the trial court denied his request.

---

[5]  Because the statute establishing the offense of unlawful possession of a firearm by a felon does not contain a culpable mental state, *see* Tex. Penal Code § 46.04 (West Supp. 2008), a knowing, intentional, or reckless mental state is statutorily implied, *see id.* § 6.02 (West Supp. 2008). The indictment in this case alleged that Rice possessed the firearm "intentionally or knowingly."

7

We review both the trial court's decision to admit evidence of extraneous acts and the denial of a mistrial for an abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005) (denial of mistrial); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g) (admission of extraneous-act evidence). A trial court's ruling should only be reversed as an abuse of discretion when the decision lies outside the zone of reasonable disagreement. *Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002). Trial courts have broad discretion in their evidentiary rulings because "trial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

*Testimony Regarding Rice's Criminal History*

Rice first argues that the trial court should have granted his motion for mistrial when Clayborne testified that Rice had been "in and out" of prison. While the State was required to prove Rice's prior felony conviction for marihuana possession, Rice contends that Clayborne's statement improperly suggested that Rice had multiple convictions. The motion for mistrial was based on the following exchange during the State's direct examination of Clayborne:

> Q: Can you tell the jury - - well, at some point did he get out of prison and want to see his daughter, [A.J.]?
>
> A: Yes.
>
> Q: And when was that?
>
> A: I mean, there's been several times.
>
> Q: Let's start with this. [A.J.] was born what year?

8

A:      In 2001.

Q:      April 15, 2001. And then the defendant went to prison. She was still a baby.

A:      This was before - - I mean, the first time was before she was born. It's been kind of in and out.

Counsel:  Judge, I'm going to object. Can we approach?

At this point in the proceedings, the trial court conducted a bench conference regarding the objection. Defense counsel complained that Clayborne's testimony had left the impression that Rice had been sentenced to prison multiple times as a result of multiple felony convictions and moved for a mistrial, saying, "I think it would only call further attention to it by asking for an instruction at this point. I simply ask to declare a mistrial based on the witness' conduct in giving those answers . . . ." The trial court denied the request and responded that it would first allow the State the opportunity to correct the impression left by the witness. The following exchange then took place between the State and Clayborne:

Q:      Ms. Clayborne, I think it was confusing before the jury went out, so I want to try to clarify. When you knew Mr. Rice, you knew that he committed the offense, this felony around November of '96; is that right?

A:      Yes.

Q:      Okay. And obviously when he committed it, he went to jail?

A:      Yes.

Q:      Are you also aware that in around December of '01, after [A.J.] was born - - that was before [A.J.] was born - - but after [A.J.] was born that he was actually sent to prison for that offense?

A:        Yes.

Q:        Okay.  So we're only talking about one felony offense?

A:        Yes.

Q:        All right.  And I think that might have been confusing, but when you spoke, you were only talking about this one felony, the possession of marihuana, 50 pounds or more but less than 2,000 pounds?

A:        Yes.

The State then continued with its direct examination.  After several unrelated questions, Rice's trial counsel requested another bench conference.  Rice's counsel argued that Clayborne's misstatement had not been adequately addressed.  The court said it would defer its ruling on the motion for a mistrial until after the witness had finished testifying.  Near the end of Clayborne's direct testimony, the court reviewed the transcript of her earlier testimony and then denied the motion for mistrial, granted a running objection, and offered to instruct the jury to not consider the extraneous offense evidence for any other purpose.  Rice rejected the trial court's offer to provide a limiting instruction.

On the record before us, we cannot say that the trial court abused its discretion in overruling the motion for mistrial.  "It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generally."  *Pavlacka v. State*, 892 S.W.2d 897, 904 (Tex. Crim. App. 1994).  Therefore, evidence of extraneous offenses is inadmissible to prove that a defendant acted in conformity with his character by committing the charged offense.  Tex. R. Evid. 404(b).  However, the State's

questioning of Clayborne after the objection made it clear that she was referring to the single felony conviction for possession of marihuana. This was not an extraneous offense, but rather an offense which the State was required to prove as part of its case in chief. *See* Tex. Penal Code Ann. § 46.04.

Furthermore, the trial court offered to instruct the jury to not consider the evidence for any improper purpose. As a general rule, an instruction to disregard inadmissible testimony regarding extraneous offenses is sufficient to cure any error. *See, e.g.*, *Whitaker v. State*, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998) (instruction to disregard witness statement about extraneous offense was sufficient to cure error); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (jury presumed to follow court's instructions); *Delgado v. State*, 986 S.W.2d 306, 309 (Tex. App.—Austin 1999, no pet.) ("As a general rule, a prompt instruction to disregard inadmissible testimony will be deemed sufficient to cure the error."). A mistrial, however, is appropriate for only a narrow class of highly prejudicial and incurable errors, *see Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000), when continuation of the trial would be futile, *see Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). That is not the case here; a limiting instruction, combined with the State's clarification on direct examination would have been sufficient to cure any error caused by Clayborne's passing reference to Rice's past criminal history. *See Arrick v. State*, 107 S.W.3d 710*,* 721-22 (Tex. App.—Austin 2003, pet. ref'd) (instruction to disregard cured error where witness repeatedly referenced extraneous crimes and misconduct by defendant). Because Rice declined the offered limiting instruction, which could have cured any error, he is not entitled to reversal here. *See Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (holding that "an event that could have been prevented by timely objection or cured by instruction to the jury will not lead

11

an appellate court to reverse on an appeal by the party who did not request these lesser remedies in the trial court").

*Testimony Regarding Threatening Messages*

Rice next argues that the trial court erred in admitting evidence of voice messages Rice left for Clayborne in which he threatened her husband Keith. When the State first questioned Clayborne about these messages, defense counsel objected, arguing that the evidence was not relevant for any purpose other than as propensity evidence and was therefore inadmissible. *See* Tex. R. Evid. 404(b). The State countered that the messages were relevant to show Rice's intent and motive for bringing the gun to Leander. *See id.* (authorizing admission of extraneous-acts evidence for purposes other than to prove conduct in conformity with character, including to prove motive, intent, and knowledge). The trial court allowed the State to discuss "the tone" of the messages, but warned the State, "Don't get into anything that would be extraneous." The court then granted Rice a running objection. Rice's counsel then moved for mistrial and the court replied that it would rule on the motion for mistrial after the witness had finished testifying.

The State later sought to introduce recordings of two of the threatening voice messages as well as a recording of the controlled call between Clayborne and Rice. The recording was admitted without objection, but when the State sought to publish the recordings, defense counsel again renewed his objection that the messages were not relevant for a proper purpose and argued further that, even if the messages were relevant, any probative value was outweighed by their prejudicial impact. *See* Tex. R. Evid. 403. The State then offered to play only the controlled call for the jury. Rice's counsel responded that the damage had already been done through Clayborne's

12

testimony regarding the messages, and requested that the court either strike all of Clayborne's testimony about the messages or declare a mistrial. The State again responded that the messages and Clayborne's testimony about them were evidence of Rice's motive, intent, and knowledge. *See* Tex. R. Evid. 404(b).

The court then recessed to review the transcript of Clayborne's testimony up to that point. After reviewing her testimony, the court ruled that the recordings were admitted for the purpose of showing Rice's intent and knowledge concerning the gun and as res gestae of the underlying offense. *See id.* (authorizing admission of extraneous-acts evidence to show knowledge or intent); *Prible v. State*, 175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005) (authorizing admission of extraneous-acts evidence as same transaction contextual evidence). The Court further ruled that it would allow the State to play the recording of the controlled call, which referenced the earlier threatening messages, as evidence of Rice's knowledge and intent. The Court offered to provide a limiting instruction to the jury. Rice responded, "[A]s far as instructing the jury, I would rather you not." Rice's counsel then requested that the court conduct the balancing test required under Rule 403 to determine if the prejudicial impact of the testimony regarding the threatening messages substantially outweighed its probative value. *See* Tex. R. Evid. 403. The court found that the recordings were relevant to elements the State was required to prove—Rice's knowledge and intent—and that their relevance outweighed their potential prejudice and granted Rice a running objection to preserve error. However, the Court also instructed the State not to go into the details of the earlier calls. After the court ruled on the objections, the State played the recording of the controlled call for the jury. The controlled call referenced the earlier, un-played messages,

13

and Clayborne referenced them when later questioned about the controlled call in both direct and cross-examination.

On the record before us, we cannot say that the trial court abused its discretion in admitting the recorded messages and allowing Clayborne to testify regarding these messages as they related to the published controlled call. Like prior offenses, extraneous bad acts are inadmissible to prove that a defendant acted in conformity with his character by committing the charged offense. *See* Tex. R. Evid. 404(b). Evidence of extraneous bad acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Here, the court admitted the evidence for the purpose of showing Rice's knowledge and intent—the key contested issue at trial. The State's theory was that Rice knowingly and intentionally brought the gun with him in order to threaten Keith. A reasonable person could view the evidence of Rice's messages, in which Rice threatened to harm Keith, as creating an inference that Rice, knowing he would see Keith that day, intentionally brought the gun to Leander in order to harm or further threaten Keith. Because the evidence of the threatening messages tended to make the State's theory more probable and tended to rebut Rice's theory that his mother placed the gun in the gift box without his knowledge, it is probative of Rice's knowledge and intent. *See Jones v. State*, 119 S.W.3d 412, 419 (Tex. App.—Fort Worth 2003, no pet.) (extraneous-acts evidence is relevant if it "tends to make an elemental or evidentiary fact more or less probable or tends to rebut some defensive theory").

In reviewing whether the evidence of the threatening messages is admissible for the purpose of showing Rice's knowledge and intent, we note that a trial court's admissibility decision

14

under Rule 404(b) must be upheld on appeal if that decision is within the zone of reasonable disagreement. *Robbins*, 88 S.W.3d at 261. "An appellate court would misapply the appellate abuse of discretion standard of review by reversing a trial court's admissibility decision solely because the appellate court disagreed with it." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). In light of the applicable standard of review and the fact that the trial court "has the best vantage from which to decide" questions of relevance, *Montgomery*, 810 S.W.2d at 391, we hold that the trial court did not abuse its discretion in admitting the evidence of the threatening messages in order to show Rice's knowledge and intent. Because we so hold, we need not address whether the evidence was also admissible as res gestae. *See Robbins*, 88 S.W.3d at 262 (trial court decision must be upheld if it is correct on any theory of law applicable to the case, especially with regard to admission of evidence).

Having determined that the evidence of the threatening messages was properly admitted under Rule 404(b), we next review whether the trial court abused its discretion by overruling Rice's Rule 403 objections. Otherwise relevant and admissible evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tex. R. Evid. 403. When a party objects to the admission of evidence on the basis of Rule 403, the trial court is required to balance the probative value of the evidence against the potential for prejudice. *Montgomery*, 810 S.W.2d at 389-90.

In conducting a Rule 403 balancing test, the trial court must consider four factors: (1) the inherent probativeness of extraneous-act evidence; (2) the potential the evidence has to impress the jury in an irrational "but nevertheless indelible" way; (3) the amount of time the State

15

will need to develop the evidence, during which the jury's attention will be diverted from the indicted offense; and (4) the force of the State's need for the evidence in order to prove a fact of consequence. *Id.* "[T]rial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Id.* at 389.

The first factor of the test, the inherent probativeness of the extraneous-act evidence, is established by the closeness in time of the extraneous acts and the charged offense. *See Templin v. State*, 711 S.W.2d 30, 34 (Tex. Crim. App. 1986) (period of time separating extraneous act from charged offense is factor in Rule 403 determinations). Clayborne testified that Rice left one of the threatening messages earlier in the day on April 15, 2006—just a few hours before Rice drove from Houston to Leander with the gun in the back of the truck. In that message, according to Clayborne, Rice threatened to harm Keith. A person who has recently threatened to harm another is more likely to knowingly and intentionally bring a gun the next time he expects to see the other person.

The second factor in the balancing test, the potential the evidence has to impress the jury in an irrational way, also supports the trial court's ruling in this case. The court specifically directed the State not to delve into the details of the threatening messages. Clayborne's testimony focused on the controlled call, in which Clayborne asked Rice why he brought the gun, and her references to the threatening messages were brief. She did not go into detail, nor did she use the messages to attempt to portray Rice as a dangerous or violent person. Furthermore, the trial court offered to provide a limiting instruction to the jury. Because juries are presumed to follow a trial court's instructions, any potential for prejudice could have been eliminated through a limiting instruction. *See Colburn*, 966 S.W.2d at 520; *Waldo v. State*, 746 S.W.2d 750, 752-53 (Tex. Crim.

16

App. 1988). Because Rice declined the offered limiting instruction, which could have prevented any unfair prejudice, he is not entitled to reversal here. *See Young*, 137 S.W.3d at 70.

The third factor in the balancing test also supports the trial court's determination, because the amount of time needed by the State to offer the extraneous-act evidence was minimal in comparison to the entire trial. As previously discussed, the threatening messages were not the focus of Clayborne's testimony and were only briefly referenced by her.

The fourth factor in the balancing test is the force of the State's need for the extraneous-offense evidence in order to prove a fact of consequence. *See Montgomery*, 810 S.W.2d at 390. The main contested issue at trial was whether Rice knowingly and intentionally took the gun to Leander. The evidence of Rice's threats was an integral part of the State's theory that Rice brought the gun with him in order to further threaten Keith.

In conducting our review of the trial court's Rule 403 determination, we again bear in mind that an appellate court "should reverse the trial court's judgment 'rarely and only after a clear abuse of discretion'" and recognize that the trial court is in a superior position to gauge the impact of the relevant evidence. *Montgomery*, 810 S.W.2d at 392 (quoting *United States v. Maggitt*, 784 F.2d 590, 597 (5th Cir. 1986)). In light of this deferential standard of review and the fact that each of the Rule 403 balancing test factors lends support to the trial court's ruling, we hold that the trial court did not abuse its discretion in determining that the probative value of the evidence of the threatening messages was not substantially outweighed by the danger of unfair prejudice.

Because we hold that the trial court did not abuse its discretion in overruling Rice's motion for mistrial based on Clayborne's testimony regarding his prior offense, nor did it abuse its discretion in admitting evidence of the threatening messages, we overrule Rice's sole point of error.

17

**CONCLUSION**

Because we have determined that the trial court did not err in denying Rice's motion for mistrial or in admitting evidence of extraneous bad acts, we overrule Rice's sole point of error and affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Pemberton, Waldrop and Henson

Affirmed

Filed:   March 26, 2009

Do Not Publish