NO. 07-10-00220-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 9, 2011

---

JONATHAN A. JACOBSON, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-418,173; HONORABLE JIM BOB DARNELL, JUDGE

---

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Jonathan A. Jacobson, appeals his conviction, by jury, for aggravated sexual assault of a child[1] and the resulting punishment of forty-five years' imprisonment. On appeal, he contends the trial court erred by overruling his objection to the State's jury argument striking at him over the shoulders of counsel. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2010).

Factual and Procedural History

Appellant does not challenge the sufficiency of the evidence to support the conviction. In fact, he concedes that the evidence was sufficient. In light of his sole issue on appeal, we address only those facts necessary to the disposition of the appeal.

Appellant was a family friend of complainant, B.J.P. The relationship between twelve-year-old B.J.P. and twenty-year-old appellant began as one resembling siblings but transformed into a possessive, sexual relationship. After a number of outbursts by appellant in response to any effort to keep B.J.P. away from him and after discovering love letters between appellant and B.J.P., B.J.P.'s mother reported her suspicions to the Lubbock County Sheriff's Department. The department began its investigation.

Initially, B.J.P. was reluctant to discuss her relationship with appellant. Early in her interview with Detective Richard Mayer, she denied the existence of a sexual relationship. Based on his investigation up to that point, however, Detective Mayer sensed that B.J.P. was not being truthful with him and, so, he persisted in asking her questions while reassuring her that, if she and appellant had had a sexual relationship, she would not be in trouble. B.J.P. admitted that she and appellant did have a sexual relationship.

During cross-examination, Mayer testified that, at the beginning of his investigation, he did not know whether appellant was guilty or innocent. Mayer explained that, even after B.J.P. admitted that she and appellant had engaged in sexual intercourse, he continued his investigation into the matter:

2

I still knew that even with her saying yes [that sexual intercourse did occur] that I would need more to prove the case, which would be the CARE exam. So I wasn't like, 'Oh, I got this one in my win pile,' you know . . . I still have to go through the steps of investigation to be sure that I'm not just falsely accusing somebody of something.

During closing argument to the jury, defense counsel seized on the "win pile" phrase and focused on Detective Mayer's investigatory approach as he attempted to paraphrase Mayer's testimony:

Some of the things that Detective Mayer told you that came out, that just jumped up. 'We have to ask ourselves, now, what is it going to take as far as details, as far as testimony, to put this case in the win pile?' You remember that's what the detective said, "in the win pile." And he thought about that. From the interview with Mike Privette right off the bat, the first interview.

. . .

The State then asked the detective if he was uncomfortable, and he felt essentially as though he had been attacked, because he sat in that chair and faced hard questions . . . . We start with him talking about how he put it in the win pile. Not about an investigation. Not about following where the evidence leads. You heard him say, 'We know what happened. We know who did it.'

Defense counsel's jury argument continued in a rather scathing tone, characterizing the investigation as a "witch hunt."

The State responded in its argument to the jury: "Somebody in this courtroom has an end result that they will twist and turn and fill in the holes to make it work–" Appellant objected to the State's argument as striking at appellant over shoulders of counsel, and the trial court overruled appellant's objection. In that same vein, the State continued: "The Defense in this case had their end result, and they will twist the words of Detective Mayer. And if you don't believe me, how many times did he stand up here and use the word 'win pile'?"

3

After the jury found appellant guilty of aggravated sexual assault of a child as alleged and during the trial on punishment, appellant testified and admitted to having had an ongoing sexual relationship with B.J.P. After considering appellant's testimony and the other punishment evidence, the jury assessed a forty-five year sentence.

Appellant timely appealed and now contends that the State struck at defendant over the shoulders of counsel. He maintains that the trial court erred by overruling his objection to the State's argument and that, in light of the nature of State's argument and the absence of any curative instruction to the jury, such error was harmful.

Analysis

Before we can reach the merits of appellant's point of error, we must first examine the impact of appellant's confession to the offense during the trial on punishment. The Texas Court of Criminal Appeals outlined the effect that a defendant's confession would have on subsequent points of error in DeGarmo v. State, 691 S.W.2d. 657, 660–61 (Tex.Crim.App. 1985). The general principle of DeGarmo, was that a defendant may not complain on appeal of an error occurring at the guilt phase of the trial when the defendant admits his guilt at the punishment phase of trial. Id. at 661; Houston v. State, 208 S.W.3d 585, 589–90 (Tex.App.—Austin 2006, no pet.). Ten years after DeGarmo, the Texas Court of Criminal Appeals reaffirmed the DeGarmo doctrine and explained the basis for such a rule:

> When the defendant testifies and judicially confesses to the charged offense, the purpose of the trial process has been served–the truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied. No reversible error should occur where the defendant has satisfied the necessity of the trial process.

4

McGlothlin v. State, 896 S.W.2d 183, 187 (Tex.Crim.App. 1995).

The Texas Court of Criminal Appeals refined and narrowed the scope of the DeGarmo doctrine in Leday v. State, 983 S.W.2d 713, 715 (Tex.Crim.App. 1998) (en banc).  The Leday court acknowledged that "we as a people have deliberately chosen to adopt laws which interfere with the truth-seeking function of the criminal trial."  Id. at 724.  Therefore, the court explained, the need to protect some fundamental rights outweighs the truth-seeking function of a criminal trial.  Id. at 724–25.  After Leday, when issues are raised on appeal by an appellant who admitted his guilt during the punishment phase of his trial, a reviewing court must "determine if appellant asserts fundamental rights or guaranties [which he cannot be estopped from asserting], or whether the truth-finding function prevails to estop appellant from raising them."[2] Gutierrez v. State, 8 S.W.3d 739, 745 (Tex.App.—Austin 1999, no pet.).  In other words, when an alleged error during the guilt/innocence phase of trial does not implicate a defendant's fundamental rights, a defendant who admits guilt at the punishment phase of trial is estopped from raising that error on appeal.  See Wenger v. State, 292 S.W.3d

_____

[2] The Leday court also set out a non-exhaustive list of errors that a defendant who confessed guilt is not estopped from raising on appeal: (1) errors violating the Due Process Clauses of the Fifth and Fourteenth Amendments regarding the right to have guilt proved beyond a reasonable doubt; (2) errors violating the right in the Double Jeopardy Clause of the Fifth Amendment to not be subjected to a second trial even when there is clear evidence of guilt; (3) errors violating the right to refuse to testify found in the Self-Incrimination Clause of the Fifth Amendment; (4) errors violating the right found in the Due Process Clause of the Fourteenth Amendment to exclude coerced confessions; (5) errors violating the Fourth Amendment prohibition against unlawful search and seizure and illegally obtained evidence; (6) errors violating Article 5 of the Rules of Evidence regarding exclusion of privileged evidence; (7) errors violating the right to have excluded custodial interrogation statements not conforming to the requirements of the Code of Criminal Procedure art. 38.22; (8) errors violating the right to have jurors prevented from asking witnesses questions.  983 S.W.2d at 725.

5

191, 202 n.8 (Tex.App.—Fort Worth 2009, no pet.) (admission of extraneous offense evidence); Jarmon v. State, 263 S.W.3d 25, 30–31 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd) (same); Houston, 208 S.W.3d at 590–91 (same); Kelley v. State, 22 S.W.3d 628, 631 (Tex.App.—Fort Worth 2000, pet. ref'd) (alleged jury charge error); Gutierrez, 8 S.W.3d at 745 (jury note-taking during trial).

During his testimony at the trial on punishment, appellant confessed to having had sexual intercourse with B.J.P. Thus, he will be estopped from raising his point of error on appeal unless we determine that the error of which he complains implicates a fundamental right. So, we first evaluate the nature of the issue appellant presents to this Court. That is, we must determine whether the issue appellant raises is one which implicates fundamental rights or guarantees and, thus, is one that, under Leday, is of the nature that would survive for our review beyond appellant's confession.

Our research yields no case that directly addresses the DeGarmo/Leday doctrine's application to assertions that the State struck at defendant over the shoulders of counsel. We, therefore, look to the treatment of this type of error in other contexts. See Jarmon, 263 S.W.3d at 30 (for a thorough discussion of the considerations that go into evaluation whether the error implicates a fundamental right under Leday).

It is well established that an appellant who fails to raise the complaint that the State struck at him over the shoulders of counsel forfeits his right to advance his complaint on appeal. See Threadgill v. State, 146 S.W.3d 654, 667 (Tex.Crim.App. 2004); see also Huff v. State, No. 07-10-00174-CR, 2010 Tex. App. LEXIS 9424, *10–11 (Tex.App.—Amarillo Nov. 29, 2010, no pet.) (mem. op., not designated for

6

publication); Stephenson v. State, 255 S.W.3d 652, 659 (Tex.App.—Fort Worth 2008, pet. ref'd). From these cases, we can conclude that the error of which appellant complains is not considered fundamental error which could be raised for the first time on appeal. Further, the Texas Court of Criminal Appeals has consistently and clearly concluded that error associated with striking over the shoulders of counsel is subject to harm analysis as nonconstitutional error. See Brown v. State, 270 S.W.3d 564, 572–73, n.2 (Tex.Crim.App. 2008); Martinez v. State, 17 S.W.3d 677, 692 (Tex.Crim.App. 2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998).

In anticipation of the State's argument, appellant cites the Court to Leday and likens the issue in the instant case to an improper prosecutorial comment on a defendant's failure to testify. Appellant does not advance an argument that the State's argument in the instant case constitutes an improper comment on appellant's failure to testify in the guilt/innocence phase of trial. Rather, he suggests that the argument that strikes at a defendant over counsel's shoulders is similar to or should receive similar treatment as a prosecutorial comment on the failure to testify. We decline to adopt his analogy. Unlike the issue at bar, a defendant's privilege against self-incrimination is a right that is directly and firmly rooted in constitutional law. U.S. CONST. amend. V; Griffin v. California, 380 U.S. 609, 614, 85 S.Ct.1229, 14 L.Ed.2d 106 (1965); Cruz v. State, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). Leday recognized this and includes such a right in its non-exhaustive list of exceptions to the estoppel-by-confession principle. 983 S.W.2d at 725.

7

Drawing upon cases that characterize the type of error which appellant urges here as forfeitable by inaction and nonconstitutional in nature, we conclude that such error does not implicate fundamental rights and, thus, is not in the category of error that would survive for our review under <u>Leday</u> after appellant confessed to having committed the offense. Under <u>Leday</u>, appellant is estopped from complaining of improper jury argument after he admitted during the punishment trial that he committed the offense, and our review of this issue on these facts is precluded. Accordingly, we overrule appellant's sole issue on appeal.

## Conclusion

Having overruled appellant's sole point of error, we affirm the judgment of the trial court.[3]

Mackey K. Hancock
Justice

Publish.

---

[3] In addition to joining the majority's opinion, C.J. Quinn would also overrule the issue because the utterance, when viewed in context, would not be one that reasonable jurors would interpret as commenting upon appellant's right to remain silent.

8