

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-10-00220-CR

JONATHAN JACOBSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2007-418,173, Honorable Jim Bob Darnell, Presiding

June 14, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Jonathan A. Jacobson, appeals his conviction, by jury, for aggravated sexual assault of a child[1] and the resulting punishment of 45 years imprisonment. On appeal, he contends the trial court erred by overruling his objection to the State's jury argument striking at him over the shoulders of counsel. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2010).

Factual and Procedural Background

By prior opinion issued in this Court, we affirmed appellant's conviction. See Jacobson v. State, 343 S.W.3d 895 (Tex.App.—Amarillo 2011). In so doing, we held that appellant's action in admitting that he had an ongoing sexual relationship with the under-aged victim during the punishment portion of the trial precluded the Court from addressing the merits of appellant's claim. Id. at 899. Subsequently, the Texas Court of Criminal Appeals granted appellant's petition for review and held that a criminal defendant who testified at the punishment stage of a trial and admitted guilt did not forfeit his right to complain on appeal about errors occurring during the guilt-innocence stage of the trial. Jacobson v. State, No. PD-1466-11, 2013 Tex. Crim. App. LEXIS 254, at *2 (Tex.Crim.App. Feb. 6, 2013). Accordingly, the Texas Court of Criminal Appeals remanded the case to this Court to consider the merits of appellant's contention regarding the objections to the State's final arguments. Id. at *28.

Appellant does not challenge the sufficiency of the evidence to support the conviction. In fact, he concedes that the evidence was sufficient. In light of his sole issue on appeal, we address only those facts necessary to the disposition of the appeal.

Appellant was a family friend of complainant, B.J.P. The relationship between twelve-year-old B.J.P. and twenty-year-old appellant began as one resembling siblings but transformed into a possessive, sexual relationship. After a number of outbursts by appellant in response to any effort to keep B.J.P. away from him and after discovering love letters between appellant and B.J.P., B.J.P.'s mother reported her suspicions to the Lubbock Police Department. The department began its investigation.

Initially, B.J.P. was reluctant to discuss her relationship with appellant. Early in her interview with Detective Richard Mayer, she denied the existence of a sexual relationship. Based on his investigation up to that point, however, Detective Mayer sensed that B.J.P. was not being truthful with him and, so, he persisted in asking her questions while reassuring her that, if she and appellant had had a sexual relationship, she would not be in trouble. B.J.P. admitted that she and appellant did have a sexual relationship.

During cross-examination, Mayer testified that, at the beginning of his investigation, he did not know whether appellant was guilty or innocent. Mayer explained that, even after B.J.P. admitted that she and appellant had engaged in sexual intercourse, he continued his investigation into the matter:

> I still knew that even with her saying yes [that sexual intercourse did occur] that I would need more to prove the case, which would be the CARE exam. So I wasn't like, "Oh, I got this one in my win pile," you know . . . I still have to go through the steps of investigation to be sure that I'm not just falsely accusing somebody of something.

During closing argument to the jury, defense counsel seized on the "win pile" phrase and focused on Detective Mayer's investigatory approach as he attempted to paraphrase Mayer's testimony:

> Some of the things that Detective Mayer told you that came out, that just jumped up. "We have to ask ourselves, now, what is it going to take as far as details, as far as testimony, to put this case in the win pile?" You remember that's what the detective said, "in the win pile." And he thought about that. From the interview with Mike Privette right off the bat, the first interview.
>
> . . .

> The State then asked the detective if he was uncomfortable, and he felt essentially as though he had been attacked, because he sat in that chair and faced hard questions . . . . We start with him talking about how he put it in the win pile. Not about an investigation. Not about following where the evidence leads. You heard him say, "We know what happened. We know who did it."

Defense counsel's jury argument continued in a rather scathing tone, characterizing the investigation as a "witch hunt."

The State responded in its argument to the jury: "Somebody in this courtroom has an end result that they will twist and turn and fill in the holes to make it work–" Appellant objected to the State's argument as striking at appellant over shoulders of counsel, and the trial court overruled appellant's objection. The State completed its argument by stating: "The Defense in this case had their end result, and they will twist the words of Detective Mayer. And if you don't believe me, how many times did he stand up here and use the word 'win pile'?"

After hearing the evidence during the guilt-innocence stage of the trial, the jury found appellant guilty of aggravated sexual assault of a child, as alleged in the indictment and, after considering the punishment evidence, sentenced appellant to confinement for 45 years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant timely appealed and now contends that the State struck at defendant over the shoulders of counsel. He maintains that the trial court erred by overruling his objection to the State's argument and that, in light of the nature of the State's argument and the absence of any curative instruction to the jury, such error was harmful.

4

Analysis

If we assume, *arguendo*, that the trial court erred in overruling appellant's objections to the State's argument, something we do not decide, then, we must ascertain whether such error was harmful. In making a harm determination, we are mindful that improper jury argument is nonconstitutional error. See Brown v. State, 270 S.W.3d 564, 572 (Tex.Crim.App. 2008). Consequently, our determination of harm is guided by the strictures of Texas Rule of Appellate Procedure 44.2(b), which provides that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b).[2] In analyzing this proposition, we are taught to weigh three factors: (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. See Mosley v. State, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998) (op. on reh'g) (citing United States v. Millar, 79 F.3d 338, 343 (2nd Cir. 1996), and United States v. Palmer, 37 F.3d 1080, 1085 (5th Cir. 1994)).

When reviewing the record to determine the severity of the misconduct, we note that the objected-to portion of the final argument accounted for less than a page of the State's nine-plus pages of closing arguments on the issue of guilt or innocence. Further, the argument of the State's attorney, when read in the context of the closing argument of appellant's trial counsel, appears to be an attempt to respond to the argument of appellant's trial counsel, which mischaracterized Detective Mayer's testimony. While the State's attorney may have gone too far, it does not appear that the

---

[2] Further reference to the Texas Rules of Appellate Procedure will be by reference to "Rule ___."

5

argument is extreme or manifestly improper when the entire record of final arguments is taken into consideration. See Brown, 270 S.W.3d at 573. Additionally, the State never returned to the subject matter after the initial objection by appellant. The error, which we have assumed, was not of the magnitude to lead us to conclude the State's argument was part of a willful and calculated effort to deprive appellant of a fair and impartial trial. See id. Accordingly, the first Mosley factor appears to only slightly favor appellant.

Regarding curative efforts of the trial court to correct the situation, the objection was overruled. Accordingly, no instruction was given. This results in the second Mosley factor to weigh in favor of appellant.

Finally, there is the third Mosley factor: the certainty of conviction absent the improper comments. Mosley, 983 S.W.2d at 259. Our review of the record leads us to conclude that the evidence of appellant's guilt was substantial. The jury heard the victim testify in graphic detail about a series of escalating incidents of sexual assault that began when she was 12 years old and continued for over a year. The jury also heard the sexual assault nurse examiner explain in clinician's detail the physical evidence and how this supported the victim's testimony. Lastly, there were the notes that the victim and appellant sent to each other. These notes supported the victim's recitation of how appellant attempted to separate the victim from the rest of her family and friends. In short, the record demonstrates that the conviction of appellant, even without the comments, appeared certain, and, accordingly, this factor weighs heavily in favor of the State. See Martinez v. State, 17 S.W.3d 677, 693 (Tex.Crim.App. 2000) (en banc).

6

Our review of the <u>Mosley</u> factors leads to our conclusion that appellant was not harmed by the comments of the State's attorney during final arguments. <u>See</u> Rule 44.2(b). Appellant's sole issue is overruled.

Conclusion

Having overruled appellant's sole point of error, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.